POUND *v.* TURCK.

1. In the absence of legislation by Congress bearing on the case, a statute of a State which authorizes the erection of a dam across a navigable river which is wholly within her limits is not unconstitutional.
2. A party is not liable for obstructing the navigation of the river by means of a dam which he has erected under the authority and pursuant to the requirements of such a statute.

ERROR to the Circuit Court of the United States for the Western District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. Matt. H. Carpenter* for the plaintiffs in error.
*Mr. William F. Vilas, contra.*

MR. JUSTICE MILLER delivered the opinion of the court..

This suit, brought by Turck and Borland, assignees in bankruptcy of French, Leonard, & Co., is founded upon allegations that the bankrupts, being lumbermen engaged in that business on the Chippewa River, in Wisconsin, were seriously damaged by the delay of a raft of lumber, shingles, and pickets, in said river, and by the breaking of the raft; all of which was attributable to obstructions placed in said river by Pound, Halbert, & Co., the plaintiffs in error, who were defendants below. The defendants pleaded the general issue; and a verdict was rendered against them, on which the judgment was founded to which this writ of error is taken.

The bill of exceptions is a very imperfect one; and two exceptions in regard to the admission of evidence are so unimportant that we do not think it necessary to notice them further than to say that we see no error in them.

The bill of exceptions shows, however, that there was evidence tending to prove that the dam and boom which constituted the principal obstruction in the river, to which the loss of plaintiffs' assignees was due, were built under authority of an act of the Wisconsin legislature; to wit, c. 235, Session Laws of 1857, approved March 5 of that year.

This statute is by its last section declared to be a public act, which shall be favorably construed in all courts.

Sect. 7 of the act authorizes " the erection of one or more dams at a given point across said river, and the building and maintaining of a boom or booms, with sufficient piers, and in such manner and form, and with such strength, as will stop and hold all logs and other things which may float in said river, which boom or booms shall be so arranged as to permit the passage of boats at all times; and at times of running lumber, a sufficient space shall be kept open in some convenient place for the passage of rafts, and the said dam or dams shall be built with suitable slides for the running of lumber in rafts over the same, and the said dam or dams and boom or booms shall be so constructed as not to obstruct the running of lumber rafts in said river." Private Laws of Wisconsin of 1857, p. 538.

The counsel for defendants seem to have made an attempt to secure from the court an instruction, that, if the injury to plaintiffs' raft was caused by the boom or dam built under this statute, they were not liable if they constructed it in compliance with its demands; but the language of the prayer alone is too vague to predicate error of its refusal. But the bill of exceptions proceeds to say, that, having refused these prayers, the court instructed the jury upon those points as follows: —

1. That the defendants are not liable to private action for injury to navigation while acting under legislative authority, provided that they have kept within the authority granted, and have been guilty of no negligence, unless their works materially obstruct the navigation of the river.

2. If the defendants, in erecting the piers and booms mentioned in the plaintiffs' complaint, did so under authority given by the legislature of the State of Wisconsin, in which State the Chippewa River lies, and put therein in the manner provided by the act giving them authority, they are not liable in damages to the plaintiffs for any injury caused by reason of their doing the thing authorized.

3. If you find the stream navigable within the rules I have laid down for determining that question, you will next proceed to determine whether the piers alleged and conceded to have been placed on the river at Chippewa Falls were a material

obstruction to the navigation thereof. If they were, the defendants had no right to place them there, nor could the legislature confer authority upon them to do so.

If there were no other objection to these three propositions in the charge of the court, it appears to us that they must have been confusing to the minds of the jury. The first and the third propositions distinctly enough declare that, if the piers and booms materially obstructed the navigation of the river, the act of the legislature was no protection; while the second as distinctly affirms that if they were built in the manner provided by the act giving them authority, they are not liable for any injury arising from them when so built. As they appear to us, these propositions, given each as an independent one on that subject, are necessarily contradictory, and we cannot tell which of them the jury accepted as the foundation of their verdict. If the second proposition alone had been given, the only inquiry of the jury on that branch of the case would have been as to the conformity of the structures to the directions of the statute. If the other two were to govern, then the jury must inquire whether those structures were a material obstruction to the general navigation of the river. That these inquiries were not the same is very clear, for no one can read the statute without perceiving that it did authorize a material obstruction to the general navigation of the river.

It authorized the construction of dams entirely across the stream, and it authorized booms, with sufficient piers, across the stream to stop and hold all logs and other things which may float in said river. It is a waste of words to attempt to prove that this would create a material obstruction to the navigation of the river by every species of water-craft. The fact that directions are given to facilitate the passage of these dams and piers by boats and rafts only shows that the evil caused by the obstructions was to be mitigated as far as possible consistently with their erection, and not that they were so to be built as to present no material obstruction to navigation.

Taking all the instructions together, and in connection with the prayer of the defendants refused by the court, we are of

opinion that the jury must have understood that if the structures of defendants were a material obstruction to the general navigation of the river, the statute of the State afforded him no defence, though they were built in strict conformity to its provisions. We are confirmed in the belief that we have correctly construed the language of the court by the argument of counsel in support of the charge, which asserts the want of power in the State to pass the act here relied on. This was unquestionably the opinion of the court as given to the jury, and its soundness is the principal matter to be considered by us.

This want of power is supposed to rest on the repugnance of the statute to that provision of the Constitution which confers upon Congress the authority "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The proposition is not a new one in this court, and cannot be sustained as applicable to the case before us without overruling many well-considered decisions, no one of which has ever been overturned, though the doctrine announced has been occasionally questioned.

The Chippewa River is a small stream lying wholly within the State of Wisconsin, but emptying its waters into the Mississippi.

Without the aid of the Constitution of Wisconsin, or the decision of its Supreme Court, or the third section of the enabling act of 1846, by which Congress authorized the formation of a State government, we may concede that the stream, though small, is a navigable river of the United States, and protected by all the acts of Congress and provisions of the Constitution applicable to such waters.

The principle established by the decisions to which we have referred is, that, in regard to the powers conferred by the commerce clause of the Constitution, there are some which by their essential nature are exclusive in Congress, and which the States can exercise under no circumstances; while there are others which from their nature may be exercised by the States until Congress shall see proper to cover the same ground by such legislation as that body may deem appropriate to the subject. Of this class are pilotage and other port regulations, *Cooly* v.

*Board of Wardens*, 12 How. 299; bridges across navigable streams, *Gilman* v. *Philadelphia*; and, as specially applicable to the case before us, to erect dams across navigable streams, *Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245. This general doctrine was very fully examined and sustained in *Gilman* v. *Philadelphia*, 3 Wall. 713, and again in *Crandall* v. *State of Nevada*, 6 id. 35.

As we have already said, the *Blackbird Creek Case* is directly applicable to the one before us; and as it has never been overruled, but, on the contrary, though much criticised, has always been sustained, it is alone sufficient to control this one. In that case, the legislature of the State of Delaware authorized the construction of a dam across the creek for the purpose of reclaiming some marsh land, and improving the health of its inhabitants.

"But the measure authorized by the statute," said Chief Justice Marshall, "stops a navigable creek, and must be supposed to abridge the rights of those accustomed to use it." He then says that if Congress had passed any act which bore upon the case, any act in execution of the power to regulate commerce, the object of which was to control State legislation over the small navigable streams into which the tide flows, the State law would be void; but that as no such action had been taken by Congress, the act of the State was not repugnant to the power to regulate commerce in its dormant state.

In the case of *Gilman* v. *Philadelphia*, the plaintiff was owner of a wharf on the Schuylkill River in the city of Philadelphia, at a point where that river had been navigable for time immemorial by a large class of vessels. The State of Pennsylvania passed a law in 1857 authorizing the city to build a bridge across that stream just below plaintiff's wharf, and between it and the mouth of the river. There was no question that this bridge would wholly exclude a large part of the vessels which had theretofore navigated the Schuylkill up to plaintiff's wharf. He applied to the Circuit Court of the United States for an injunction, and that court dismissed his bill. On appeal to this court, the decree was affirmed, on the express ground that in the absence of legislation by Congress the act

of the Pennsylvania legislature was not repugnant to the commerce clause of the Constitution.

The present case falls directly within the principle established by these cases, and aptly illustrates its wisdom. There are within the State of Wisconsin, and perhaps other States, many small streams navigable for a short distance from their mouths in one of the great rivers of the country, by steamboats, but whose greatest value in water-carriage is as outlets to saw-logs, sawed lumber, coal, salt, &c. In order to develop their greatest utility in that regard, it is often essential that such structures as dams, booms, piers, &c., should be used, which are substantial obstructions to general navigation, and more or less so to rafts and barges. But to the legislature of the State may be most appropriately confided the authority to authorize these structures where their use will do more good than harm, and to impose such regulations and limitations in their construction and use as will best reconcile and accommodate the interest of all concerned in the matter. And since the doctrine we have deduced from the cases recognizes the right of Congress to interfere and control the matter whenever it may deem it necessary to do so, the exercise of this limited power may all the more safely be confided to the local legislatures.

It is obvious from these remarks that the court, in its charge to the jury and in refusing the prayer of plaintiff, did not give to the act of the legislature of Wisconsin the effect to which it was entitled as a defence in the action.

It is argued by counsel that there is no evidence connecting the defendants with the authority conferred by that statute. But as the record does not purport to contain all the evidence, and as the charge of the court is based upon the idea that there was evidence to go to the jury on that subject, so much so that the most important part of the charge relates to that matter, we must presume there was such evidence.

It is also insisted that the record shows no exception to the charge of the court. But the objection is hypercritical. A close examination of the bill of exceptions satisfies us that the plaintiffs in error did except both to the refusal to grant the instruction prayed for and to those given by the court on the same points.

For the error in the charge of the court in that matter the judgment will be reversed and a new trial awarded.

<em>So ordered.</em>

MR. JUSTICE CLIFFORD concurred in the judgment of the court, but adhered to the views expressed in his dissenting opinion in *Gilman* v. *Philadelphia*, 3 Wall. 732.