Heerman *v.* Beef Slough Manufacturing, etc., Co.
and others.

(*Circuit Court, W. D. Wisconsin.* ————.)

Navigable Stream — Use as a Public Highway — Obstructions to Steamboat Navigation.—Where a river lies wholly within the territory of a single state, and certain piers and booms have been erected in that river by a private corporation, under the authority of the legislature of that state, such piers and booms will not be abated by a court of equity, at the instance of a private individual, as a nuisance, although they obstruct the steamboat navigation of the river, and such corporation has exceeded its powers in the erection of the same.

Same—Injunction—Action at Law.—In such a case, where the interests involved are very large, and the improvements complained of have been erected under color of legislative authority, and have been used in facilitating an important branch of commerce, and have been acquiesced in for a long time, a court of equity will not interfere by perpetual injunction until the right of the party complaining has been established at law, and it appears that no adequate compensation can be afforded in damages.

Same—Chippewa River — Transportation of Logs. —The use of the Chippewa river by the public as a highway for the transportation of logs and lumber is a right common to all, recognized and protected by the municipal law; and such right must continue so long as the public have any need of its exercise, unless changed or abrogated by the legislature of the state or by congress.

Bunn, J. This action is brought by the plaintiff, a resident of Minnesota, and the proprietor of certain steamboats engaged in the navigation of the Chippewa river in Wisconsin, against the defendants, two corporations existing under the laws of Wisconsin, to restrain and prohibit them from running loose logs in the Chippewa river, and to compel them to remove therefrom certain piers, booms and dams, placed therein by the defendants, to aid and facilitate the running, driving and storing of logs, on the ground that such piers, booms and dams, and the running and driving of logs in said river, constitute an obstruction to navigation, and are therefore a nuisance which ought to be abated and perpetually enjoined by the decree of this court.

The case was heard upon a general demurrer filed by the defendants to the plaintiff's bill of complaint.

v.1,no.3—10

The allegations of the bill are quite voluminous, a great many facts being alleged which go to show that the improvements placed in the Chippewa river by the defendants, and the running of loose logs therein by them, materially interfere with the running of rafts of lumber, the running of ferry boats across the stream which carry the United States mail, and also with improvements of the river which are being made and in contemplation of being made by the government of the United States, as well as with argicultural and manufacturing interests of the people along the river. But as the plaintiff does not connect himself in any way with any of these several interests, or show that the alleged obstruction to these interests especially affect him, it would seem that these allegations, which take up so much room in the bill, are surplusage and quite immaterial to the plaintiff's case.

The allegations which are essential to a proper understanding of the case are in substance as follows:

That the Chippewa river, for 100 miles above its mouth, is a navigable highway and water of the United States, leading into the Mississippi river, and an avenue of commerce between the state of Wisconsin and other states of the Union, for conveying, by ascending navigation, the products of other states and countries, with boats and barges, and for conveying the products of this state, by descending navigation, with boats, rafts, etc., to markets outside of the state; and that the said river has been so used for the past 30 years, and has been recognized by the Congress of the United States as a public highway and navigable stream.

That appropriations were made by Congress in 1874 and 1875, for the purpose of making examinations and survey of the stream. That such surveys were made and approved by the United States, and public improvements on the river have been begun.

That the plaintiff for twelve years has been engaged in steamboating on said river between its mouth and the city of Eau Claire, at the head of navigation.

That the defendant, the Beef Slough Manufacturing, Booming, Log Driving and Transportation Company, is a joint

stock corporation, organized in the year 1867, under chapter 73 of the Revised Statutes of Wisconsin, for the declared purpose of driving and booming logs, manufacturing lumber, doors, etc., on and at the head of Beef Slough, on the Chippewa river.

That before 1870 the said defendant company constructed in said river, and on Beef Slough, which is one of the channels of the river, without any lawful authority, a number of piers of wood and stone of great size and strength, and connected the same by booms placed in the river, in such a manner as to cause a considerable obstruction to the navigation of the river, and so as to divert, to some extent, the waters from the main channel into said Beef Slough; that afterwards, in the year 1870, the legislature of Wisconsin passed an act entitled "An act to define certain rights and duties of the Beef Slough Manufacturing, Booming, Log Driving and Transportation Company," known as chapter 299 of the Private and Local Laws of 1870, by which the state attempted to authorize the said company to maintain the said piers and booms constructed for the purpose of turning loose logs floating in said river into Beef Slough, and to construct and maintain in Beef Slough, and upon the land owned and leased by said company, such piers, dams and booms as might be necessary to confine the water of said slough to its proper channel, and to secure the logs running into the same: *provided,* that no booms, dams or piers should be constructed which should prevent the free and unobstructed passage by boats through Beef Slough, or from Beef Slough into Perrin Slough, so called; and *provided* further, if within 18 months from the passage of said act good and sufficient provisions were not made for the free and unobstructed passage aforesaid, then the privileges granted by said act should cease; and the said company were required to pave and stone the bed of said Beef Slough at or near its connection with said Chippewa river, for the purpose of maintaining the level of said bed and preventing an excess of the volume of water flowing over the same. And whereby it was provided that said company should have the exclusive privilege of driving and booming all logs, timbers,

railroad ties and fence posts which might run into Beef Slough, until the same should have been delivered to the owners thereof below the main rafting boom of said company, which was situated near the mouth of said Beef Slough; and whereby it was provided that said company should have the right to charge for driving from their booms, at or near the head of said slough in the Chippewa river, and for booming and delivering, as aforesaid, such logs, timber, railroad ties and fence post, at certain specified rates.

That the said Beef Slough is in fact a navigable branch of said Chippewa river, and departs from the main channel about 18 miles above the outlet of said slough into the Mississippi river, flowing into the latter river about nine miles below the mouth of the main Chippewa, and is, in its greater portion, navigable for boats, barges and rafts, and a considerable portion thereof was so advantageously used before the unlawful obstruction thereof by said defendant; that, at all times prior to the obstruction of the same by said defendant, the main and natural channel of said river flowed to the south of said Beef Island, and the same was the principal navigable channel of said river prior thereto, and such channel was known and called by the name of the river.

That upon the north side of said Beef Island there is a channel known as Horse Slough, which is of greater length and more circuitous than the river aforesaid, and which, prior to said obstructions being placed in the main river, while possible to be navigated in seasons of high water, was not commonly employed in navigation by either steamboats or rafts.

That the defendants, with the intent and design to obstruct the navigation of said slough and river, and to secure the gains and profits of tolls, have, without any authority of law, erected, since 1870, large wood and stone piers in addition to those already in said slough, and in the main river at and near the head of said slough, and also above said Beef Slough at Round Hill, and near the head of Horse Slough in said river, and have constructed piers and booms in connection therewith in such manner as to have entirely blocked up and obstructed the original and natural navigable channel of said

river, and also Beef Slough, to such an extent as to have entirely prevented the passage of steamboats, barges and rafts therein, and have, by such works, since the year 1874, turned the water of said river not deflected into Beef Slough, for the purposes of their private business, as hereinbefore stated, into the said Horse Slough channel, so that no other channel remains open to ascending or descending navigation, and thereby they have greatly obstructed and impeded the free and natural navigation of said river for boats, barges, rafts and other water craft, and have made such navigation much more circuitous, difficult and expensive, and have rendered it necessary to construct additional and special jetties or dams in order to improve the navigation of said Horse Slough, and have deflected a part of the natural flow of water from the Chippewa river into said Beef Slough, and thereby injuriously diminished the natural volume and force of the current thereof, so that the same is much less capable of supporting the navigable boats and rafts therein, and less able to remove by natural action the sand bars formed at the mouth of the river and along its course; and by their said piers and booms have turned all logs, timber, railroad ties and fence posts floating in said river into said Beef Slough, and so provided and adapted the same that all such logs, timber, railroad ties and fence posts must necessarily be turned into said Beef Slough, and thereby have taken possession thereof, and in the future, unless restrained by the court, will continue so to take possession of and force the same into said Beef Slough, and there assume sole control of further driving the same until they shall reach the outlet into the Mississippi river. And have erected and constructed in said Beef Slough other piers, booms and dams in such manner that they have taken exclusive possession thereof, and entirely prevented any navigation or use thereof by the public, including the plaintiff, by boats, barges, steamboats or otherwise, and give out and threaten that they will henceforward continue so to do.

That in the year 1869 or 1870 the defendant, the Beef Slough Company, without any authority of law, entered upon the business of cutting, in the winter season, upon lands sit-

uated upon the head waters of the Chippewa river, pine logs and timber, and casting them upon the waters of said river to be floated by force of the current, during spring and early summer, down the said river, for the distance of about 150 miles, to the booms of said company at Beef Slough. That in the beginning the number of logs so cut and cast upon said waters was comparatively small, but the said company have since, in combination with the other defendants to this bill, continually increased the extent of such business and the quantity of logs so cast upon said waters, and with each successive year increased the obstructions and dangers to navigation.

That subsequently said Beef Slough Company combined with the Mississippi River Logging Company, and greatly increased the said business of cutting and floating logs upon said river, and greatly augmented the said obstructions to navigation.

That for the purpose of securing some colorable right to such operations the defendant, the Chippewa River Improvement and Log Driving Company, was organized by articles dated the first day of February, A. D. 1876, for the purpose of driving and transporting logs and timber from the upper waters of the Chippewa and tributaries to and into Beef Slough, and to improve said Chippewa river and its tributaries, by constructing dams and piers, booms, levees, dykes, cut-offs and such other structures, in such other streams as may be deemed necessary to insure or increase the facility of such streams for the running, floating or driving of logs or timber, with power to charge and receive a reasonable sum by way of compensation on the logs or timber so run or floated.

That since the date of the said articles the three corporations aforesaid had united to injure and destroy the navigation of said river, and have largely increased their operations aforesaid, so that during the year 1877 the said defendants did, directly and indirectly, cast upon and cause to float down the said river to Beef Slough about 200,000,000 feet, board measure, of pine logs, being about 1,000,000 of such logs in number. And the said defendants, combining, give out and

threaten that they will henceforth continue to increase their said operations, and will, year after year, cut and cast upon said river, to be floated down from the upper waters thereof to Beef Slough, still greater numbers and quantities of such pine logs.

That the effect of such acts and business of the defendants has been and will be to render the navigation of said river, during those portions of the year when navigation from natural causes is the best, exceedingly difficult, dangerous and expensive.

That the course of the operations of the said defendant has been and will be to cover the surface of said stream with logs floating down the same in great masses, so that the entire channel of the river has been, and will hereafter be, occupied by them during the period of several weeks in the spring months, and for many weeks during the rise of the water in summer. And such logs have been and will be left, wholly unguided, to run as the course of the current directs, and generally to float with the rapid motion, and by reason of the numbers in which they have hitherto been placed in said river, they have a force much superior to that of single logs, and sufficient to crowd out to one side floating vessels with which they come in contact, by reason of which it has hitherto happened, and must happen in the future, that the steamboats of the plaintiff have been much impeded and much delayed in navigation by day, have been oftentimes broken and seriously damaged in their wheels, and have been compelled to entirely suspend their course by night, and tie up to the bank to escape the dangers threatened by such running logs; and the amount of navigation has been greatly diminished, and must heareafter continue to diminish until the same shall cease, unless the use of such river for such purposes be restrained.

That the floating of logs as aforesaid on said river has caused great and permanent injury to the navigability of the stream, by striking against and breaking down the banks thereof, and thereby widening the river in some places, and making it shallow and less navigable.

That the plaintiff has often been compelled to suspend, for a considerable number of hours at a time, the running of his boats, especially by night, in consequence of the danger from running logs, imposing large expense upon him; and on different occasions the rudders, wheels, log chains and guards of his boats have been broken and rendered unserviceable in consequence of said logs running in said river. That twice the plaintiff's barges have been sunk by reason of the running logs, and that damages have in various ways been inflicted upon him, exceeding in amount the sum of $6,000. That said defendants have, during the spring of 1878, made a boom at the head of Beef Island which extends across the main and only practicable channel of the said Chippewa river in such a manner that no boats can safely pass up or down the said river unless said boom be opened or taken away.

That the ostensible purpose thereof is to turn floating logs into Beef Slough, but the same is unnecessary for such purpose, but the real object and effect of the same is to divert a larger volume of said water into said slough, and the effect of such boom will be to divert the waters to a great extent into Beef Slough, so as to practically destroy steamboat navigation on said river, and also to form a sand bar across the main channel of said river and effectually block up the same against the passage of boats. And the said defendants have constructed 10 or 12 sheer booms in said river in such manner as to endanger the passage of steamboats, the same projecting far into the stream, and kept without a light or any man upon them, whereby the hulls of steamboats ascending said river are in great danger of being struck and punctured, and boats are often seriously injured and delayed in the effort to pass the same; and that at Round Hill the defendants have built a boom, more than a third of a mile in length, so as to have entirely cut off the former channel at that point and to cause the same to fill with earth and sand, and in extension thereof have built a sheer boom of such length that the same can be extended entirely across the river; and in entire disregard of the rights of the plaintiff the said defendants frequently carry and extend the same so

as to leave but a single, narrow, deficient, and dangerous passage between said boom and the opposite bank.

That the defendant the Chippewa River Improvement and Log Driving Company, aided and abetted by the defendant, the Beef Slough Company, have, during the summer of 1878, constructed on the Chippewa river, at Little Falls, a large dam, entirely across the said river, 16 feet in height, at a point where, by reason of the low surface of the country above, on the banks of said river, such dam will cause a very wide overflow and backset of the water.

That said dam has been constructed solely for the purpose of gathering a reservoir or supply of water sufficient to float the logs of said defendants at any season of the year, when the volume of water in said river would not naturally be sufficient in its ordinary flow, and that said defendants give out and threaten that they will, at any time in the year, when they desire for the convenience of their log driving, entirely shut said dam and stop the flow of water in said river until the said dam shall be filled, and will then let it off in such quantities as shall be convenient to them to drive logs therewith. That for such purposes the said dam is constructed with 32 gates, to enable the defendants to regulate the escape of water for their convenience. That when the same is closed there is not water enough left in the Chippewa, below Eau Claire, to enable steamboats or barges to be employed. That on October 29, 1878, said defendant, the Chippewa River Improvement Company, without any previous notice, closed their said dam and kept the same closed for a period of seven days, and thereby two steamboats of the plaintiff, which were then in said river, were left without sufficient water to navigate upon, and ran aground and were injured, and were compelled to suspend their regular trips for a period of seven days, to the great damage of the plaintiff. And again, on the eighth of November, the defendant again closed said dam and shut off the water for five days, with similar effect, and by means of said stoppages plaintiff suffered $1,000 damage. And the defendants give out and threaten that they will hereafter continue to stop the water

of said river to suit their convenience, from five to eight days at a time.

And the plaintiff prays that the defendants be perpetually enjoined from the running of loose logs in the river, and that the court will adjudge such piers, booms and dams to be a nuisance, and that the same be abated, and that the defendants be required to remove the same and restore the said river and slough to their original condition.

The demurrer raises the question whether, upon the facts alleged, the court can make a decree granting the relief prayed for.

We think it cannot.

1. The bill of complaint seems to be framed upon the theory that the Chippewa river being navigable for steamboats as well as for the purpose of floating saw logs to market, there is something peculiar and sacred under the constitution and laws of the United States and the state of Wisconsin, about steamboat navigation, that should give it the preference over and entitle it to the protection of the law against this other form of commercial enterprise. And no doubt if congress, by virtue of the commerce clause in the constitution, should at any time assume legislative jurisdiction and control of the navigation of the Chippewa river, as it may at any time do, that body could subordinate the logging interest to that of steamboat navigation, or might prohibit the use of the stream for such purpose altogether. Under the authority to regulate commerce its power is supreme, whenever it shall see fit to exercise it. But until congress assumes to control the commerce of the river, I take it to be clear law that, as to those streams that lie wholly within the territory of a state, though approachable by other streams from other states, as in this case from the Mississippi river, that the state within whose boundaries such river lies may legislate in reference to its commercial use as a public highway; and such has been the uniform practice throughout the country. This doctrine was first settled by the supreme court in the case of *Wilson* v. *The Blackbird Creek Marsh Co.* 2 Pet. 245–250.

The legislature of Delaware had passed an act authorizing that company to construct a dam across Blackbird creek, which the company proceeded to construct. The defendant, being the owner of a sloop regularly enrolled and licensed under the laws of the United States, broke and injured the dam. The company brought suit for the injury. The defendant set up as a defence those facts, and that the creek was a public navigable stream under the laws of the United States, etc. The plaintiff demurred, and the demurrer was sustained by the supreme court and court of appeals of Delaware, and on appeal by the supreme court of the United States, Chief Justice Marshall delivering the opinion. Of course the dam was an obstruction to navigation, but it was authorized by the legislature of the state, and such legislation was held not to be repugnant to the constitutional power of congress over the subject, so long as congress had never chosen to exercise that power.

Again, the same doctrine was affirmed in *Gilman* **v.** *Philadelphia*, 3 Wall. 713, a very instructive case. And, still later, in *Pound* v. *Turck*, 95 U. S. 459, which was a case that went up from this district, and arose out of the construction of a dam across the Chippewa river. Pound, Halbert & Co., under the authority of the legislature of Wisconsin, had erected a dam across the river. Turck, as assignee of French, Leonard & Co., brought an action to recover damages sustained by the delay and breaking of a raft of lumber caused by the obstruction of the dam. There was a verdict for the plaintiff, but the cause was reversed in the supreme court, following the authority of the two previously adjudged cases above cited.

So far, then, as the obstructions to steamboat navigation caused by the booms and piers put in the river by the Beef Slough Company at the head of Beef Slough and vicinity are authorized by the state legislature, they are not a nuisance to be abated by a court of equity, even if the plaintiff had shown that he has been especially damaged by them, which he has not. The use of the river as a common highway is clearly **a**

proper subject for regulation by municipal law, until congress shall assume control of it in the interest of commerce.

2. Section 1, c. 299, Private and Local Laws of 1870, provides that "the Beef Slough Manufacturing, Booming, Log Driving and Transportation Company are hereby authorized to maintain the piêrs, side, shore, sheer or glancing booms already constructed and heretofore used by them on and along the Chippewa river for the purpose of turning loose logs floating therein into Beef Slough, and to construct and maintain in Beef Slough, and upon land owned or leased by them, such piers, dams and booms as may be necessary to confine the water of said slough within its proper channel, and to secure the logs running into the same," with the provisos before mentioned, and the provision for paving the mouth of Beef Slough, which proviso and requirements the complaint alleges have not been complied with by the defendant.

It must be admitted that the authority conferred by the law of the state upon the company to enable it to take possession of Beef Slough for the purpose of maintaining piers, booms and dams is very broad. Still it is alleged that the company, in placing such obstructions in the river and in engaging in the business of cutting and putting logs into the river, has exceeded its corporate powers, and therefore that such obstructions constitute a nuisance, and the defendant ought, in equity, to be compelled to remove all its improvements, whether authorized by law or not, and be enjoined from running any more logs in the river. But it appears to the court, on principle and authority, that such is not the proper remedy, and that the subject cannot be regulated by injunction, or other decree in chancery. Allowing that the company has exceeded its corporate powers in putting in the improvements, and in engaging in the running of logs, and has not complied with all the conditions of the acts of the legislature, it does not follow that a court of equity can decree a forfeiture, for it amounts to nothing less if the prayer of the bill is granted, in a collateral proceeding like this brought by an individual. That is rather a matter between the corporation and the power which created it. So long as the state is sat-

isfied, and does not interfere either through its legislature or by a direct proceeding in court to recover penalties, or to avoid its charter, it is not for a court of equity to step in at the instance of a private individual, declare the entire improvements a nuisance, cause them to be removed, and enjoin acts of which he may complain.

In a case of such magnitude, where the interests involved are so vast, and the improvements complained of as obstructions to navigation have been constructed under color of legislative authority, and have been used in facilitating an important branch of commerce, and acquiesced in so long, a court of equity will not interfere by perpetual injunction until the right of the party complaining has been established at law, and it appears that no adequate compensation can be afforded in damages. *Burnham* v. *Kempton,* 44 N. H. 78; *Wason* v. *Sanborn,* 45 N. H. 169–172; *Ripon* v. *Hobart,* 3 Mylne & Keen, 169–179; *Eastman* v. *Manufacturing Co.* 47 N. H. 71; *Irwin* v. *Dixon,* 9 How. 10–25; *Remington* v. *Foster,* 42 Wis. 608; *Weller* v. *Smeaton,* 1 Cox, 102; *Delaware & Hudson Canal Co.* v. *Lawrence,* 2 Hun, 163–168; *Mohawk Bridge Case,* 6 Paige, 554.

So long as congress does not assume jurisdiction of the river to control and direct its commerce, the defendants have the right to maintain such piers, dams and booms in the river, for facilitating the running and securing of loose logs, as the state by its legislation has authorized, though they may constitute a material obstruction to other branches of commercial enterprise on the river. And if they, in putting in such improvements, have exceeded their authority, or have not complied with all the conditions imposed, that is a matter which cannot be inquired into and remedied in a suit of this nature by a private individual.

It is noticeable that the plaintiff does not show, by any allegations of fact, that he has himself sustained any special, direct and material damage beyond the public at large, on account of the erection and maintenance of the defendants' improvements at and in the vicinity of Beef Slough, which he should do to put him in position to maintain his suit. *Ir-*

*win* v. *Dixon*, 9 How. 10–25. All the special injury he has sustained has been on account of the floating of loose logs in the river, and the action of the defendant, the Chippewa River Improvement and Log Driving Company, in combination with the other defendant, in erecting a dam on said river at Little Falls, some 50 to 75 miles above Eau Claire, the head of steamboat navigation, by which the defendants have held back the water to such an extent, from five to eight days at a time, on two different occasions, as to materially obstruct the navigation of the river below Eau Claire, and hinder and retard the plaintiff in the running of his boats.

But if the defendants have the legal right to float logs in the river, and to dam the river for that purpose, then the plaintiff has not set out enough to enable him to maintain a bill in equity for a perpetual injunction.

That the defendants, in common with the public, have the right to float logs down the Chippewa and other rivers and streams in the lumbering portions of the state seems to me incontestable; and if so, then equity will not grant relief against the use of the river for such purpose, although the right may be so exercised on occasions as to cause damage to individuals engaged in other departments of commerce. Equity will follow the law and not go in opposition to it. And if there happen, as there may, an abuse of the legal right, equity will not interfere to forfeit or crush out the right, but will turn the injured party over to his action at law for damages.

This is the only practicable course; for the manner in which the river shall be used by these several interests cannot, from the nature of things, be regulated by injunction. All a court of chancery could do, if anything, would be just what the plaintiff asks for in this case—enjoin and prohibit the use of the river for the purpose of floating logs, the use of the improvements placed in the river to facilitate that interest, and compel them to be taken out; which would amount to a complete denial of the right, and the forfeiture of an immense property, and a vast commercial interest. It cannot by a decree regulate the use of these improvements,

nor the use of the river as a common highway by the pro-
prietors of these different interests, any better nor so well as
they are now defined and regulated by the law.

The Chippewa river is a public highway, and if a person
should, without authority from the state, and disconnected
with any purpose of improving or facilitating any branch of
commerce upon the river, place obstructions in it, perhaps,
in a suit brought by the proper party, equity would relieve
against such obstructions to commerce by declaring them a nui-
sance, and enjoin their use. But the court cannot, by its decree,
regulate the use of the river by the several classes of persons
pursuing different lawful branches of commerce and navigation,
any more than it can that of any other highway. The rights of
these several classes are already well enough defined by law,
and if any person or class of persons take or exercise a too
exclusive or unreasonable use or possession of the river, to
the injury of other persons, the law affords an adequate
remedy in damages. What would be an unreasonable use of
the stream for purposes of commerce, such as would give a
right of action at law, must be determined from a full consid-
eration of all the facts and circumstances of the particular
case, and should be submitted to a jury.

A good deal might depend upon the relative importance of
these different interests to the welfare of commerce and the
public good; for the court, as already intimated, cannot admit
that there is anything peculiar about steamboat navigation
that should give it any preference or superiority over other
forms of commerce, upon a stream adapted in a greater or
less degree to both. The interest which the public has in the
matter is to see that the stream is kept open and free to the
use of the public for those purposes of commerce for which by
nature and adaptation it is best fitted. If, in the judgment
of the state and of congress, it is worth more and can be more
advantageously and profitably used for the purpose of float-
ing to market the products of the vast pine forests of the state
than for the navigation of steamboats, then it should be used
for that purpose. Or if it can be as profitably and advan-
tageously used for both, then it should be so used, under the

aw, as it is found, and under such regulations as the legislature may from time to time make. The matter is peculiarly a subject for municipal regulation. As a matter of fact, the lawfulness of the use of the Chippewa river by both these interests has been fully recognized by the state.

That the use of the Chippewa river, in common with many other rivers and creeks in the northern half of the state, for the floating of logs as well as lumber to market is a lawful use, there is no manner of doubt. It has been practiced for nearly or quite half a century, and although the right has sometimes been denied by those engaged in other commercial interests, the use of these streams for such purpose has been general and uninterrupted for a long period, and from a time antedating the organization of the state government. The vast importance of the logging and lumbering interests on the Chippewa river sufficiently appears from the bill of complaint, and if it did not the court should take judicial notice of it. To do otherwise would be for the court to affect ignorance upon a subject of common notoriety, respecting a leading commercial interest of the state.

The lawfulness of this right has been repeatedly recognized and upheld by the decisions of the circuit and supreme courts of Wisconsin, as well as by a long course of state legislation, and is fully recognized by the act partially set out in the complaint, by force of which the Beef Slough Manufacturing, Booming, Log Driving and Transportation Company claims the right to maintain the piers and booms in the river, which are in part the subject of this suit.

By chapter 399 of the General Laws of 1876, entitled "An act to facilitate the driving of logs down the rivers of this state, and their tributaries," as well as chapter 144 of the Laws of 1872, of which it is amendatory, the right is explicitly recognized, and authority conferred for the organization of incorporated companies, for the purpose of driving, sorting, and delivering logs on the rivers of this state, and their tributaries, and for the improvement of such rivers and tributaries for such purpose; and it was under and by virtue of the authority of these acts that the other defendant, the Chippewa

River Improvement and Log Driving Company, was organized, and constructed the dam at Little Falls to create a reservoir from the surplus water in times of a high stage, and detain it to be discharged and used for the floating of logs as it should be needed.    And the decisions of the courts have gone far in holding these streams navigable highways for the purpose of floating logs; no further, however, than the public need has required.    Indeed, it seems a public necessity that these streams, which may be profitably and advantageously used for the floating of pine logs at recurring seasons of the year, especially with the aid of dams, which the law authorizes, and which of late it has become a common practice to employ—though they may go dry at other times—should be held navigable in fact for such purposes.

There is, perhaps, no other way by which the wealth of the pine forests of the state can be utilized with advantage or profit.    *Whisler* v. *Wilkinson*, 22 Wis. 572; *Olson* v. *Merrill*, 42 Wis. 203.

The supreme court has also affirmed the validity of state legislation which provides for the improvement of the river by the building of booms and dams for the purpose of facilitating the running of logs.    *Tewksbury* v. *Schulenburg*, 41 Wis. 584; *Wis. River Improvement Co.* v. *Manson*, 43 Wis. 255.

This use of the Chippewa as a lawful use has been more than once recognized and affirmed by congress in acts appropriating money for the survey and improvement of the stream, and especially in 20 U. S. St. at Large, 372, in a proviso annexed to the appropriation as follows: "That nothing shall be done, nor shall any improvements be made on the said Chippewa river under or in pursuance of this act, or the appropriation hereby made, which shall directly or indirectly prevent, interfere with or obstruct the free navigation of the said river, as heretofore, by steamboats or other water craft, or the free use thereof, as heretofore, for the running, floating, guiding or sheering of loose logs, or rafts of lumber or logs, upon or down the same, or which shall directly or indirectly prevent, obstruct or interfere with the use of any slough, arm

or branch of the said river, as heretofore, for the holding, assorting or rafting of logs therein." Again, in the same volume, page 158, attached to an appropriation of $10,000 for completing and protecting wing dams and jetties then in course of construction upon the Chippewa river, in and near its mouth, is this provision: "That nothing herein shall be construed, nor shall any expenditure of this appropriation be made, so as to affect existing legal or equitable rights in or upon the said Chippewa river or its branches, whether such rights arise under the laws of the United States or the state of Wisconsin."

The authority of congress under the constitution is the highest that can be exercised on this subject, and should be decisive. But if there were needed any further authority to show the lawfulness of the use of the Chippewa river by the public for the purpose of floating logs to the markets of the world, and to show the authority of the state, in the absence of congressional legislation, to authorize the improvement of the river by the building of dams, piers and booms, to facilitate that interest, we have it in the decision of the supreme court in the case of *Pound* v. *Turck,* already referred to, which says: "There are within the state of Wisconsin, and perhaps other states, many small streams navigable for a short distance from their mouths in one of the great rivers of the country, by steamboats, but whose greatest value in water carriage is as outlets to saw logs, sawed lumber, coal, salt, etc. In order to develop their greatest utility in that regard it is often essential that such structures as dams, booms, piers, etc., should be used, which are substantial obstructions to general navigation, and more or less so to rafts and barges. But to the legislature of the state may be most appropriately confided the authority to authorize these structures where their use will do more good than harm, and to impose such regulations and limitations in their construction and use as will best reconcile and accommodate the interests of all concerned in the matter."

In the light of these precedents and statutory authorities, in connection with an extensive and uninterrupted usage coeval with the existence of the state, we do not hesitate to hold

that the use of the Chippewa river by the public as a highway for the transportation of logs and lumber is a right common to all, recognized and protected by the municipal law; and that such right must continue so long as the public have any need of its exercise, unless changed or abrogated by the legislature of the state or by congress. And there is no reason why it should not be so. It is the general commerce of the river which it is the object of the constituton and laws to keep inviolate.

Navigation proper, or, in its more limited sense, that is by steamboats, vessels, sloops, ships, barges, etc., is but a branch of commerce, which includes all these and much more, and, when navigable streams are best fitted for other branches of commerce, it is the true interest of the public to preserve them inviolate for the purposes to which they are best adapted. *Brig City of Erie* v. *Canfield*, 27 Mich. 479; *Moore* v. *Sanborne*, 2 Mich. 519; *Delaware & Hudson Canal Co.* v. *Lawrence*, 2 Hun, 163. Nor do I overlook the fact that it is alleged in the plaintiff's bill that the defendants have entered upon the business of cutting and running large quantities of pine logs without any authority for so doing in their charters. That allegation is more a conclusion of law than a statement of a fact; but considering it as an allegation of fact it makes the case no better; for the river is still a common highway for the floating of logs, open to all persons who have occasion to use it, and these companies, as against other individuals, would be entitled to the protection of the law applicable to all. And if the state did not complain it is difficult to see how an individual could.

Suppose a corporation organized under the state law for banking purposes engage in the business of farming or distilling, and use the common highways of the country for the purpose of carrying the products of the farm or distillery to market. Is there any doubt that the same law of the road would apply to it that applies to all? or would it be claimed that such corporation might be enjoined, at the suit of a private individual, from such a use of a common highway, because the business it had engaged in was *ultra vires?*

The case made by the bill against the defendant, the Chippewa River Improvement and Log Driving Company, is not more satisfactory than that against the other defendant. Organized and claiming authority under chapter 399 of the Laws of 1876, that company has built at immense cost, across the Chippewa, some 50 or 75 miles above steamboat navigation, a flooding dam, 16 feet high, with 32 gates, for the purpose of creating a reservoir of water to be kept and discharged as circumstances should require for the floating of logs, and, in using this dam, have so held back the waters of the river on two occasions as to injuriously affect the plaintiff in the running of his boats, by leaving them upon sand bars for the want of sufficient water to float them. This is the substance of the charge. It is true the plaintiff alleges that the act of 1876 does not confer any authority to float logs below the head of navigation, or in any manner to obstruct or interfere therewith, nor authorize any such unnatural stoppage of the water, and that if it were so construed it would be utterly void as against the laws of the United States and the constitution of Wisconsin. But this is a conclusion of law which adds nothing to the case made by the facts; and the facts alleged are not enough to entitle the plaintiff to the relief sought, which is the abatement of the dam as a nuisance, and a perpetual injunction against its further use, and the running of loose logs in the river.

The act under which the said defendant is organized empowers all companies incorporated for the purpose of driving, sorting and delivering logs on the rivers of this state and their tributaries, and for the improvement of such rivers and tributaries for such purpose, to improve any of such rivers and tributaries, or any part thereof, by clearing and strightening the channels thereof, closing sloughs, erecting sluiceways, booms of all kinds, necessary side, rolling and flooding dams, *or otherwise provided,* however, that such works of improvement shall not materially obstruct or impede navigation upon such rivers or tributaries.

This, it must be admitted, is very broad authority, and it is difficult to see why it does not in terms warrant the building

of such a dam as is complained of.   I think it does.   But, if there were any doubt on that point, the question should not be determined in a proceeding of this kind, as already shown, but the party should be first required to establish his right in a court of law.   It is claimed that the statute was not intended to apply to the Chippewa river because the Chippewa river is a navigable stream, and that it is unconstitutional and unlawful to build dams or to float logs upon a navigable stream.   But we think there is no room for such a distinction.   The statute is framed in the most general terms, and was evidently intended to apply to all the lumbering streams of the state, whether navigable in any degree for boats or not; and such has been the general understanding and construction of the statute.

The complaint does not allege that the dam itself is an obstruction to navigation so as to bring the case within the proviso of this act, but only that the use of it in holding back the water of the river too long impedes and obstructs navigation in the river below Eau Claire, where, and where only, the river is navigable by boats.   It is not claimed that the river is navigable for boats at Little Falls, where the dam is built, or between there and Eau Claire, on the river, some 60 or 75 miles below.

The practice of building these flooding dams on all the rivers and smaller streams in the lumbering portions of the state has become of late universal, and their beneficial use to the logging interest is immense.   It is expressly authorized by statute, and would seem to be almost a public necessity, it being the only way in which much of the pine timber can be utilized or made available.   That the use of these dams should in some instances injuriously affect navigation by boats could hardly be avoided, and must have been foreseen by the legislature.   But it is peculiarly the province of legislation to determine whether or not their convenience and benefit to the logging interest and to general commerce would more than counter-balance the hindrance to steamboat navigation which their use would necessitate.

It is a proper subject of municipal regulation; and, where

the policy of the state is once made manifest by legislative acts, it is not in the province of a court of chancery, by its decrees, to run counter to that policy, and to declare that a nuisance, or the use of that a nuisance, which the law authorizes. If there be an abuse of the use of the thing so authorized by law, the law affords a remedy in damages; and that would be the appropriate remedy in this case if the law must be resorted to for a remedy. It does not follow, however, that, because the plaintiff has suffered damages in the passage of his boats by reason of the defendants' use of their dam, the plaintiff should be entitled to recover without any regard to other questions; such as the question whether, under all circumstances, the defendants have made an unreasonable use of the water, and how the beneficial use to the defendants of the water, in the manner charged, compared with the inconvenience which it caused to the plaintiff. Those are questions which would clearly be involved in the case, and it would be the province of the jury to determine them from all the facts and circumstances in evidence.

The logging business, the business of sawing lumber and running rafts, and that of navigation by boats, are all interests that have grown up together on the Chippewa, as also on some of the other lumbering streams in the north half of the state. They are all interests which the law recognizes, and they are all entitled to its protection. They are not and should not be regarded as antagonistic. On the contrary, they are more or less dependent one upon the others; and by a little mutual concession and forbearance, and a just and reasonable spirit on the part of those persons severally devoted to them, they may, undoubtedly, all flourish in themselves, and be a help to one another. Such a course in the long run will be found much more advantageous to the public, and to the parties especially concerned, than the engaging in litigation, the effect of which, if successful, would be to exterminate or cripple what some are apt to regard as a rival interest.

The demurrer must be sustained, and as the plaintiff does not desire to amend his bill of complaint it will be dismissed with costs.