UNITED STATES *v.* THE MISSISSIPPI & RUM RIVER BOOM CO. and others.

*(Circuit Court, D. Minnesota. ——, 1880.)*

1. MISSISSIPPI RIVER—LOGS—INJURIES.—The use of the Mississippi river as a highway to run logs down to market is a right common to all, but there is no immunity to individuals for injuries committed while using such right.

2. SAME — FALLS OF ST. ANTHONY — PUBLIC IMPROVEMENTS. —An act authorizing the construction of an apron of planked timber over the crest of the falls of St. Anthony, in the Mississippi river, under the direction of the secretary of war, to protect the rock and prevent the washing away of the underlying soft sand-stone, is within the constitutional jurisdiction of congress.

3. NAVIGABLE RIVER—PUBLIC IMPROVEMENTS—INJURIES—INJUNCTION. Where a right common to all is abused, or so used as to cause damage, the injured party must seek redress by an action at law; but where congress has assumed jurisdiction of a river in the interest of commerce, the equitable arm of the court can furnish relief against any threatened injury to any improvements made under its authority.

Application by plaintiff for preliminary injunction.

*William W. Billson,* U. S. Dist. Att'y, for United States.

*William Lochren* and *James Smith, Jr.,* for defendants.

NELSON, D. J.   Suit is brought by the government against the defendants to restrain and prohibit them from running or permitting any logs to be run over the falls of St. Anthony, or from setting adrift, from the boom of the defendant company, any logs, which, if let loose and not guided into the channel provided by the government, would pass over said falls and seriously impair, if not destroy, the government structures erected at that point.   A sluice-way through the public works built at the falls of St. Anthony, on the Mississippi river, ample for the passage of logs through it to a point on the river below, is completed according to the plan adopted by the officers of the war department in charge thereof.

This sluice-way was necessary to secure the safety of the government works erected to preserve the falls and facilitate the transportation of logs.   An apron of planked timber had been constructed over the crest of the falls to protect the rock, and prevent the wasting away of the underlying soft sandstone, when it was ascertained that the passage of logs down through the rapids and over the apron, following the current of the stream, shattered, displaced, and permanently destroyed sections of the wood-work of which the apron is built.

On March 3, 1879, congress, in the river and harbor bill, appropriated $10,000 to build a sluice-way through the works which secured the safe water carriage of logs to a point below the falls without injury to the works previously erected. There are no means provided by the government to direct loose logs floating down the river from above into the mouth of the sluice-way, and the natural current of the river would carry them through the rapids and over the apron.

The defendant boom company is a corporation created by the act of the legislature of the state of Minnesota, and has constructed its booms above the head of Nicollet island, lying in the Mississippi river one-half mile or more above the government sluice-way, and by its charter is authorized to collect and control, for the distance of 20 miles above the falls of St. Anthony, all logs coming down the river, and to assort them, and, on request of the owners, turn them out of its

booms, but has no control of the logs for the distance of one-eighth of a mile above the sluice-way.

All logs, or nearly so, turned out of the boom, unless guided to the sluice-way, go over the apron, injuring it as stated. The proper officer of the government has authorized this suit, at the request of the engineers in charge, and has made the boom company, John S. Prince, and Horatio Houl-ton parties defendant. The last named are owners of logs in the boom, who, it is alleged in the bill, have requested the boom company to turn their logs loose, and take no steps to guide them to the sluice-way, but permit them to pass over the apron, to the serious injury of the work. A motion is made, on bill of complaint and affidavit, for an injunction. The boom company presents an answer admitting in part the allegations of the bill, but denies that the passage of logs, in the present stage of water, would injure the government works, and charges that the sluice-way is not built through the works, and is not suitable or sufficient for any practical use as at present constructed. John S. Prince, one of the defendants, also admits most of these allegations by an affidavit read, and charges, *inter alia,* that the appropriations were made, used, and expended to preserve the water-power at the falls owned by private parties, and for their benefit; and that the averments in the bill that the works constructed by the United States are for the improvement of the navigation of the Mississippi river, or tend to protect or preserve the same, are untrue; and that the government works are an obstruction to the free navigation of the river. He also states that the sluice-way is inadequate, and not sufficient for the purpose designed.

Such are, in substance, the matters set up by the defendants in opposition to the relief asked for.

The Mississippi river, for a long distance above the falls of St. Anthony, is chiefly valuable as an outlet to market for logs and lumber. This branch of commerce has been developed and fostered by the state of Minnesota, and is a source of great wealth. The use of the river as a highway for such

purposes is a right common to all, subject to be regulated and controlled by the federal government; or, in absence of any such regulation, by the states, where portions of the river lie wholly within their boundaries. This common right, however, to run logs down a river gives no immunity to individuals for injuries committed while using it.

The government of the United States, in the interest of this commercial enterprise, inaugurated a system of public improvements at the falls of St. Anthony, and annual appropriations are made in the river and harbor bill by congress, and expended under the direction of the secretary of war. The mode of improvement is confided to the discretion of that officer, and whatever system is adopted in furtherance of the object designated is done under the authority of congress. The plan suggested by the engineering officers in charge was regarded suitable for the preservation of the falls of St. Anthony, for which the appropriation was made, and to facilitate the passage of logs from above the falls to the river below.

These improvements were made to protect this branch of commerce, which, in the opinion of congress, required the preservation of the falls, and whether the expenditure of money appropriated is judicious, or whether the improvements have proved a benefit to private persons, is of no importance.

The only questions involved in this litigation are—*First,* were the structures lawfully erected? The authority to make these improvements cannot be doubtful. The general control, protection, and improvement of the navigable rivers of the United States, in the interest of commerce, are within the constitutional jurisdiction of congress. *Second,* are the improvements threatened with injury or destruction? It is substantially conceded that the acts complained of, if continued, will break up and destroy the apron erected over the falls, and the danger apprehended is of a character which, to guard against, would require the expenditure of a large sum of money. Such interference with the control assumed by the federal government over this locality cannot be permitted, and the parties threatening the safety of the public structures

will be restrained, at least, until a final hearing, when all the facts will be before the court, and the rights of all parties be fully considered and adjusted.

It is true that ordinarily, where a right common to all is abused, or so used as to cause damage, the injured party must seek redress by an action at law; but where congress has assumed jurisdiction of a river in the interest of commerce, I think it not doubtful that the equitable arm of the court can furnish relief against any threatened injury to any improvements made under its authority. It would undoubtedly be proper, and perhaps advisable, for the government to extend its improvements in aid of this branch of commerce, and adopt a more perfect system by erecting suitable structures to obviate all difficulties in the way of a free and unrestricted water carriage of logs at this point; but that a more comprehensive system has not been adopted, is no answer to the claim that improvements already made should be protected.

Unless the boom company, or the owners of logs, provide means to prevent their passage over the apron when let loose, or guide them in the sluice-way, if they are designed to be transported below the falls, an injunction will issue, and it is so ordered. See *Blackbird Marsh Co.* 2 Pet. 245; *Gilman* v. *Philadelphia*, 3 Wall. 713; *United States* v. *Duluth*, 1 Dillon 469, and authorities; *Pound* v. *Turck*, 95 U. S. 459; *Heerman* v. *Beef Slough Manuf'g Co.* 1 FED. REP. 145.