UNITED STATES v. BELLINGHAM BAY BOOM CO.

(Circuit Court of Appeals, Ninth Circuit. June 28, 1897.)

No. 308.

1. NAVIGABLE WATERS—OBSTRUCTIONS—FEDERAL AND STATE LEGISLATION.
    Acts of congress merely making appropriations for the improvement of a river lying within a state do not operate as an inhibition against state legislation authorizing the construction of booms, dams,· piers, etc., so as to make unlawful such structures when erected under state authority.
2. SAME.
    To bring obstructions and nuisances in navigable waters lying within a· state within the cognizance of the federal courts, there must be some statute of the United States directly applicable to such streams.
8. SAME—RETROACTIVE LEGISLATION.
    Act Cong. Sept. 19, 1890 (26 Stat. 426), which, in section 10, prohibits the creation of any obstruction "not affirmatively authorized by law" to the

navigable capacity of any waters over which the United States has jurisdiction, was not retroactive so as to make unlawful the continuance of a boom constructed prior to its passage, under authority of a state law.    72 Fed. 585, affirmed.

4. SAME—EFFECT OF STATE LAWS.
   That a log boom constructed under authority of a state statute on a river lying wholly within the state may not conform to the regulations prescribed by the state statute does not make it an unlawful structure, so as to be cognizable in the federal courts, under Act Cong. Sept. 19, 1890 (26 Stat. 426). The question whether it does comply with the provisions of the state statute is a state, and not a federal, question.

Appeal from the Circuit Court of the United States for the District of Washington, Northern Division.

William H. Brinker, U. S. Atty.
Thomas R. Shepard and Thomas G. Newman, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.    This is a suit in equity, brought under the direction of the attorney general to enjoin the Bellingham Bay Boom Company, appellee, from maintaining a boom in Nooksack river, in the state of Washington, and for a decree requiring the removal of such obstruction.    The Nooksack river is a navigable stream having its source in Whatcom county, Wash., running through said county, and emptying its waters into Bellingham Bay, and is navigable from its mouth for a distance of several miles towards its source by steamboats and light water craft.    There are settlements, farms, and towns along the river, and prior to the construction of the boom and afterwards there was more or less traffic by steamboats plying between the towns and settlements along the river, carrying in merchandise and carrying out farm products.    These settlements are increasing every year.    There are also, along the river, immense forests of timber, which, when cut up into saw logs, can be brought to market by floating them down the river, and to make the river available for this purpose it is necessary to maintain a boom at the mouth of the river.    The circuit court found that the value of this timber was much greater than the value of the other products transported upon the river.    A number of witnesses testified on behalf of the appellants to the effect that the boom with the piles driven to support it had a tendency to collect drift timber, and cause shoaling at the mouth of the river, by detaining the silt and sand, and causing the same to form a bar, and that the navigation of the river by boats is interfered with by the bar, and by jams of drift collecting therein, and by the filling up of the channel.    On the other hand, several witnesses testified on behalf of the appellee that said boom is not so constructed as to render navigation thereon impossible during any considerable portion of the year.    They admit that at certain periods of the year large quantities of brush, trees, and drift are, by freshets and high water, carried down to the mouth of the river, where the same become lodged by reason of shoal water; that the appellee has expended, and does expend, large sums of money every year for the improvement of

said river by removing the brush, trees, and drift from the mouth thereof, and from the channel of the river, for several miles from its mouth; that by reason of such improvements, and of the location and maintenance of the boom, the navigation on said river of boats and water craft has been greatly facilitated. The circuit court expressed the opinion that as to the disputed facts the witnesses for the appellee had more actual knowledge, and were better able to know the facts by reason of having been connected with the works, and having made examinations and surveys, than the witnesses for the appellants, who testified only from a general knowledge. The testimony is uncontradicted that prior to the construction of the boom the trees and drift carried down the river by floods formed jams which obstructed navigation, requiring much labor and expense to keep the river open, and the court found that since the construction of the boom the appellee, at an expense of several thousand dollars, had kept the mouth of the river clear of obstructions,—other than the boom itself and saw logs collected therein,—and by such expenditures had rendered ample recompense for the impediment to navigation of the river by boats, caused by its boom. The circuit court dismissed the bill.

It is contended by appellants that for more than a year prior to the commencement of this suit (May 2, 1890) the appellee maintained, and continues to maintain, an obstruction in the navigable waters of said river, in such manner as to blockade the river during a large portion of the year, rendering navigation thereon impossible, without obtaining permission from the secretary of war to continue or to maintain said boom. This suit is brought in pursuance of the provisions of an act of congress "making appropriation for the construction, repair, and preservation of its public works on rivers and harbors, and for other purposes," approved September 19, 1890 (26 Stat. 426, 465), section 7 of which provides that it shall not be lawful to build structures which may obstruct or impede the navigable waters of the United States, unless permission of the secretary of war has been first obtained. Section 10 of the act reads as follows:

"That the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity of any waters, in respect of which the United States has jurisdiction, is hereby prohibited. The continuance of any such obstruction, except bridges, piers, docks and wharves, and similar structures erected for business purposes, whether heretofore or hereafter created, shall constitute an offense and each week's continuance of any such obstruction shall be deemed a separate offense. * * * The creating or continuing of any unlawful obstruction in this act mentioned may be prevented and such obstruction may be caused to be removed by the injunction of any circuit court exercising jurisdiction in any district in which such obstruction may be threatened or may exist; and proper proceedings in equity to this end may be instituted under the direction of the attorney general of the United States."

The boom in question was constructed in the summer of 1890, and was fully completed prior to the 19th of September, 1890. The contention of the appellee is that it had the right to construct, and has the right to maintain, said boom, under the provisions of an act of the legislature of the state of Washington entitled "An act to declare and regulate the powers, rights, and duties of corporations organized to build booms and to catch logs and timber products therein," ap-

proved March 17, 1890 (Laws Wash. 1889–90, p. 471). Section 3 of this act provides that:

"Such corporations shall have the power and are hereby authorized, in any of the waters of this state, or the dividing waters thereof, to construct, maintain, and use all necessary sheer or receiving booms, dolphins, piers, piles, or other structure necessary or convenient for carrying on the business of such corporations; provided, that such boom, or booms, sheer booms or receiving booms, shall be so constructed as to allow the free passage between any of such booms and the opposite shore 'for all boats, vessels, or steam crafts of any kind whatsoever, or for ordinary purposes of navigation." 1 Hill's Ann. St. Wash. § 1592.

It is conceded by appellants that, in the absence of any congressional legislation upon the subject, the states possess plenary power by appropriate enactments to authorize the obstruction of navigable streams which exist within the state; but the contention is that there had been congressional legislation, prior to the passage of the act of the state of Washington, appropriating money for the survey and improvement of the river (23 Stat. 144; 24 Stat. 327; 25 Stat. 423), and that the object and purpose of congress to continue such improvement has never been abandoned (26 Stat. 452, 464; 27 Stat. 115; 28 Stat. 371; 29 Stat. 234). It is argued that the sole object of congress in making these appropriations was to regulate and promote commerce, which was clearly within its constitutional power. This contention is not sustained by the authorities. The acts of congress making appropriations for the improvement of the river imposed no inhibition upon the legislature of the state, which prevented the construction under state authority of booms, dams, piers, or bridges upon the river. The power of congress to pass laws for the regulation of the navigation on rivers, and to prevent any and all obstructions therein is not questioned. The law, however, is well settled that there must be a direct statute of the United States in order to bring within the scope of its laws, as administered by the courts of law and equity, obstructions and nuisances in navigable streams within the states. Such obstructions and nuisances are offenses against the laws of the state within which the navigable waters lie, and may be indicted or prohibited as such, but they are not offenses against the United States laws which do not exist, and none such exist except what are to be found on the statute book. Willson v. Marsh Co., 2 Pet. 245, 252; Gilman v. Philadelphia, 3 Wall. 713, 727; The Passaic Bridges, Id. 782, 793; Pound v. Turck, 95 U. S. 459; Escanaba & L. M. Transp. Co. v. Chicago, 107 U. S. 678, 683, 2 Sup. Ct. 185; Cardwell v. Bridge Co., 113 U. S. 205, 208, 5 Sup. Ct. 423; Bridge Co. v. Hatch, 125 U. S. 1, 8, 8 Sup. Ct. 811.

In Willson v. Marsh Co., supra, the legislature of the state of Delaware authorized the construction of a dam across a creek for the purpose of reclaiming some marsh land, and thereby improving the health of the inhabitants. Chief Justice Marshall, in delivering the opinion of the court, said:

"The act of assembly by which the plaintiffs were authorized to construct their dam shows plainly that this is one of those many creeks passing through a deep, level marsh adjoining the Delaware, up which the tide flows for some distance. The value of the property on its banks must be enhanced by ex-

cluding the water from the marsh, and the health of the inhabitants probably improved. Measures calculated to produce these objects, provided they do not come into collision with the powers of the general government, are undoubtedly within those which are reserved to the states. But the measure authorized by this act stops a navigable creek, and must be supposed to abridge the rights of those who have been accustomed to use it. But this abridgment, unless it comes in conflict with the constitution or a law of the United States, is an affair between the government of Delaware and its citizens, of which this court can take no cognizance."

He further said that, if congress had passed any act which bore upon the case, any act in execution of the power to regulate commerce, the object of which was to control the state legislation over those small navigable streams into which the tide flows, the state law would be void; but that, as no such action had been taken by congress, the act of the state was not repugnant to the power to regulate commerce in its dormant state. In Pound v. Turck, supra, which was an action for damages occasioned by the construction and maintenance of a boom over the Chippewa river, a navigable stream in the state of Wisconsin, the court, after referring to Willson v. Marsh Co., and other cases, said:

"The present case falls directly within the principle established by these cases, and aptly illustrates its wisdom. There are within the state of Wisconsin, and perhaps other states, many small streams, navigable for a short distance from their mouths, in one of the great rivers of the country, by steamboats, but whose greatest value in water carriage is as outlets to saw logs, sawed lumber, coal, salt, etc. In order to develop their greatest utility in that regard, it is often essential that such structures as dams, booms, piers, etc., should be used, which are substantial obstructions to general navigation, and more or less so, to rafts and barges. But to the legislature of the state may be most appropriately confided the authority to authorize these structures where their use will do more good than harm, and to impose such regulations and limitations in their construction and use as will best reconcile and accommodate the interests of all concerned in the matter. And since the doctrine we have deduced from the cases recognizes the right of congress to interfere and control the matter whenever it may deem it necessary to do so, the exercise of this limited power may all the more safely be confided to the local legislatures."

At the time of the passage of the law by the state of Washington, and of the construction of the boom, there was no direct statute of the United States prohibiting the construction or maintenance of such booms in the inland rivers of the state. The adoption of section 10 of the act of congress was an exercise of its constitutional right to regulate commerce between the states. The object was to take control of the navigable waters of the United States so as to protect the interests of the government and prevent obstructions to the free navigation of said waters. It was intended to apply to all cases where the states had failed to pass any laws in regard thereto, and to prohibit obstructions not authorized by law. But it was not intended by congress to be retroactive in its results. This is made perfectly clear from the fact that by its terms it is made applicable only to such obstructions as were "not affirmatively authorized by law." Congress recognized that, in the exercise of the legitimate powers of the state government, acts had been passed allowing individuals and corporations to build and construct booms, wharves, piers, and other structures upon the rivers, and it was not the intention of congress to interfere with such works as had been "affirma-

tively authorized by law," either by the legislature of the state or by acts of congress. In U. S. v. Burns, 54 Fed. 351, 362, the court, speaking of the act of congress under consideration, said:

"What is it that the congress has prohibited by the tenth section? All obstructions to the navigable capacity of the river are not prohibited, but only those 'not affirmatively authorized by law.' This legislation, in effect, concedes that which is well known to be true, that the necessities of commerce, the interests of the country, demand that certain obstructions to the navigable capacity of our rivers must be authorized and their creation permitted. Under certain circumstances, bridges, piers, docks, dams, and booms, the object of which is to facilitate trade and commerce, become in many instances serious obstructions to the navigable capacity of our waters, and yet they are 'affirmatively authorized by law.' "

It is argued by appellants' counsel that, admitting the laws of the state of Washington to be valid, still the boom in question was not constructed as authorized by the statutes of the state of Washington, and for that reason it is claimed that, as constructed, "it was not affirmatively authorized by a valid law, or by any law whatever; but, on the contrary, it was constructed and maintained in direct violation of the law which gave defendant its being." That is a matter between the corporation and the power that created it. The question whether or not the boom was constructed in strict accordance with the terms and provisions contained in the statute of Washington cannot be considered by this court. That question is one to be determined by the state, not by the federal, court. This is settled by the decision of the supreme court in the case of Bridge Co. v. Hatch, supra, where the court, in considering this matter, said:

"Whether they are conformable or not conformable to the state law relied on is a state question, not a federal one. The failure of the state functionaries to prosecute for breaches of the state law does not confer power upon the United States functionaries to prosecute under a United States law, when there is no such law in existence."

See, also, Heerman v. Manufacturing Co., 1 Fed. 145, 156, 157.

The views herein expressed are conclusive of this case. It is therefore unnecessary to discuss other questions argued by the respective counsel. The judgment of the circuit court is affirmed.