## Case No. 2,312.

### The CALIFORNIA.

[1 Sawy. 463.][1]

District Court, D. Oregon. Jan. 28, 1871.

PRACTICE IN ADMIRALTY—ANSWERS—EXCEPTIONS —IMPERTINENCE—HALF PILOTAGE LIEN ON VESSEL MAY BE ENFORCED IN ADMIRALTY.

1. The general answer in admiralty should be pertinent and responsive to the narration or allegations in the articles of the libel, and if the response is not full, explicit and distinct, exceptions for insufficiency lie to compel a sufficient answer.
  [Cited in The Glenearne, 7 Fed. 605; The Whistler, 13 Fed. 296, 297.]

2. But if the answer is responsive to the libel, no exceptions will lie to it, on the ground that it is not a defense to the suit, whether the matter is impertinent or not.
  [Cited in The Glenearne, 7 Fed. 605.]·

3. Exceptions in admiralty, nature and office of, defined.

4. It is impertinence to blend matter intended as a defensive allegation, with the response or answer to an allegation of the libel.
  [Cited in The Whistler, 13 Fed. 296, 297.]

5. The state statute gives a pilot half pilotage as a compensation for tendering his services to pilot a ship out over the Columbia river bar, in case the same are refused: Held, that such a claim is a claim for pilotage, which, by the general maritime law, is a lien upon the vessel, and the same may be enforced by a suit in admiralty.
  [Cited in Holmes v. O. & C. Ry. Co., 5 Fed. 84; The Glenearne, 7 Fed. 606. Followed in The Alzena, 14 Fed. 175. Cited in The William Law, Id. 795; The Edith Godden, 25 Fed. 512; The Allianca, 56 Fed. 613.]
  [See Ex parte McNiel, 13 Wall. (80 U. S.) 236, affirming Banta v. McNeil, Case No. 966; The America, Id. 289.]

[In admiralty. Libel by A. D. Wass for half pilotage against the steamship California, the North Pacific Transportation Company, claimants.]

William Strong, for libellant.
Joseph N. Dolph, for claimant.

DEADY, District Judge. This suit is brought by a Columbia river bar pilot, attached to the steam tug Astoria, to recover $55.50 for half pilotage. The libel, which was filed September 9, 1870, alleges that on August 7, 1870, the libellant was duly qualified, according to the laws of Oregon and the United States, as a bar pilot at the mouth of the Columbia river, and that the steamship California was then lying at the port of Astoria, bound outward to the foreign port of Victoria, without a pilot on board duly licensed under the laws of Oregon, and that libellant then and there offered his services to the master of said vessel to pilot her out of said river and over the bar thereof to the sea; and that said vessel then and there drew thirteen feet six inches of water, and that said libellant was entitled to demand and receive one half the pilotage allowed for

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

taking a vessel across the bar, to wit: $4 per foot draft for the first twelve feet, and $5 per foot for the excess, or the sum of $55.50.

The amended answer of the North Pacific Transportation Co., claimants, filed November 28, 1870, is what may be called a general and special one. 2 Conk. Adm. 235. In direct response to the allegations of the libel it sets forth: First. That the respondent has no knowledge, etc., as to whether the libellant was qualified as a pilot as alleged in the libel; that it is true that the libellant hailed the vessel and offered his services as alleged, but that it is not true that libellant was the first pilot that offered his services "on that occasion," or that there was no pilot on board said vessel at the time as in the libel alleged, "for the truth and fact was and is and respondent doth allege and propound that one Hays was the first pilot that offered his services to the vessel on said August 7, and that said Hays was a duly qualified pilot and had a certificate from the inspectors of steamboats for the district of Oregon, authorizing him to pilot said vessel to the open sea; and that said Hays, as such pilot, had said vessel in charge at the time libellant hailed her, and thereafter on said day did pilot her across the Columbia river bar to the open sea. Second. That it is true said vessel drew thirteen feet six inches of water, but it is not true that the libellant is entitled to demand and receive from said vessel or the master or owner thereof half pilotage or the sum of $55.50 or any other sum.

In bar of the suit, the special answer alleges that the libellant ought not to have or maintain the same, because the claim of the libellant for half pilotage is based on the provisions of an act of the legislative assembly of Oregon, of October 17, 1860, and that the right to demand and receive half pilotage in the cases therein provided for, is limited to the master and consignee of the vessel, and the claim therefor is not thereby given against the vessel or made a lien thereon.

On December 3, libellant filed exceptions to the answer of the respondent, and on January 3, 1871, the same were argued by counsel and submitted. The exceptions are four in number, and seemed to have been framed upon the notion or idea, that if the matters contained in an answer in admiralty are insufficient as a defense to the suit, that exceptions for insufficiency will lie. But this is a mistake. At common law, in such a case, the party objecting to the insufficiency of the pleadings would demur. But in admiralty, as in equity, the answer of the respondent is literally his response or answer to the narrative or matters alleged in the libel or bill, or the interrogations appended thereto. If this is not full, explicit and distinct as to each separate allegation of the libel, it is said to be insufficient—not insufficient as a defense to the suit, but as an an-

swer or response to the charges in the libel—and exceptions will lie thereto. If the exceptions are allowed, the judgment of the court is, that the respondent make a further and better answer, which he may be compelled to do if he omits or refuses. Adm. Rec. 27, 28. If, however, the answer contains matter not responsive to the allegations or interrogatories of the libel and not constituting a defense thereto, it is said to be impertinent or irrelevant, and may be excepted to on that account.

The first exception is somewhat peculiar, and it does not appear from the exception itself whether it is taken for insufficiency or impertinence. It is taken to the answer to the first article of the libel which, it is alleged, contains "denials" of the libellant's cause of suit, and also an allegation of new matter as a defense thereto, when the same should have been stated separately. If the premises be correct, I suppose the exception is well taken for impertinence, for although the new matter be sufficient as a defensive allegation or peremptory exception to the suit, it is impertinent to blend and confuse it with the response to a particular article or allegation of the libel. When it becomes necessary to insert in the answer some matter which cannot be pertinently introduced as responsive to any allegation in the libel, such matter must be separately stated in an article framed after the manner of an article in a libel. Such an article is sometimes called a defensive allegation, and sometimes a peremptory or dilatory exception, as the case may be, and is analogous to a plea in bar or to the jurisdiction at common law. 2 Conk. Adm. 544; Ben. Adm. 250. Now, I do not perceive that any part of the answer embraced in this exception is not responsive and pertinent to the narration in the first article of the libel. The article states that on the voyage in question, that the libellant was the first pilot to hail the vessel and tender his services, and that at the time the vessel had no pilot on board. The answer, after contesting negatively that the libellant first hailed the vessel and that she was then without a pilot, affirms the fact to be that Hays, a pilot qualified as therein stated, was then on board and in charge, and piloted her to sea. Certainly this is responsive to the allegation, and answers it according to the fact, as the respondent asserts it to be. I know of no reason or rule by which a party is bound to rest his response to an allegation with a mere denial, when, as he conceives, the contrary is also true and material.

The second exception is taken to the matter of the answer, called "new matter" in the first exception, but for the reason that the same is not sufficient to constitute a defense to the suit. This exception, as well as the third and fourth, should have been taken, if at all, for impertinence or irrelevancy instead of insufficiency. As has been shown, exceptions for insufficiency are only

to be taken when the matter excepted to is not a full, explicit and distinct response to the allegation or article of the libel which it professes to answer. But these exceptions, judging from the argument of counsel, appear to have been taken because, as the libellant says, the matter excepted to does not constitute a defense to the suit; in other words, it is impertinent or irrelevant. But, as counsel for both parties have argued the exceptions as if they had been taken for impertinence, I will consider and dispose of the questions arising upon them accordingly; with leave to the libellant, upon payment of costs, to file exceptions for impertinence and irrelevancy as of the day when these were filed. This exception is not well taken upon any view of the matter; for if the allegation does not constitute a defense to the suit it is not impertinent, because in direct response to the first article of the libel.

The third exception is not well taken. The portion of the answer covered by it is in direct response to the second article of the libel. It admits the alleged draft to the vessel, but denies that libellant is entitled to receive half pilotage, or any sum, from the vessel, or master, or owner, as is alleged in the libel. This is too plain to waste words upon.

The fourth and last exception arises a question which was decided against the respondent in this court in The George S. Wright [Case No. 5,340]. In view of the adverse decision, counsel for respondent has asked the court to reconsider the question. His argument (which is not without force and plausibility) is, that the claim for half pilotage, on account of services tendered and refused, is given by the state statute, and that as such statute gives no claim or lien upon the vessel for such service, but limits the remedy of the pilot to the master, or in case of his default to his consignee, the vessel itself is not liable, and therefore this suit cannot be maintained. In support of his argument and illustration of the subject, counsel cited and commented upon The Robert J. Mercer [Case No. 11,891]; The Wave [Id. 17,300]; The Pacific [Id. 10,643]; The America [Id. 289]. Sections 15 and 27 of the state pilot law (Code Or. 842, 843) provides: that the master of a vessel may pilot her in or out of the river "but he shall, notwithstanding, when bound into the river, pay to such pilot as shall first offer his services outside of the bar, full pilotage, * * * and if bound out, one-half pilotage. If the master omit or refuse to pay the pilotage fees in any instance * * * then his consignee shall become liable for the same."

In the absence of legislation by congress, the state has power to regulate the subject of pilotage, and in the exercise of that power may prescribe the qualifications of the persons who may perform that service—what compensation they shall receive, and under what circumstances an offer to pilot a vessel shall be equivalent to performance, and thereby give the pilot making such offer a right to compensation as pilotage. Cooley v. Board of Wardens, 12 How. [53 U. S.] 311. The fourteenth admiralty rule authorizes a suit to be brought against the vessel for pilotage. Claims for pilotage are cases of admiralty jurisdiction. Ben. Adm. 289, 391.

The offer to pilot a vessel under certain circumstances is declared by the state statute, so far as the right to compensation is concerned, to be equivalent to performance, and the supreme court in Cooley v. Board of Wardens, cited above, has decided such a statute to be a reasonable and valid regulation of the subject of pilotage. This being so, then a claim for compensation for services tendered and refused is a claim for pilotage, and therefore a lien against the vessel which may be enforced by a suit in admiralty.

In Steamship Company v. Joliffe, 2 Wall. [69 U. S.] 457, it was held, under similar circumstances, that the law implied a contract in favor of the pilot to pay half pilotage as a "compensation for the exertion and labor made by the pilot, and the expenses and risk incurred by him in placing himself in a position to render the service, which, in the majority of cases would be required." The case of The America, cited above, is the latest authority cited on the subject. The case arose in the district of Massachusetts—the right to sue the ship for half pilotage, because of services tendered and refused, was maintained by the court. True, the state statute in that case expressly gave a lien upon the vessel for the amount, and upon that ground it was sought to distinguish the case from The Robert J. Mercer, decided otherwise in the same court some years before, when the statute did not give such lien. But it is manifest that Mr. Justice Lowell in The America does not rest the right to sue the ship upon the fact that the state statute gave the pilot a lien, but also and independently of such statute lien, upon the general rule of the maritime law, which gives the pilot a lien upon the ship for services rendered, either in fact or contemplation of law. He says:

"It has never been decided that, in the case of a contract confessedly maritime, and which by the general maritime law would give rise to a lien, the remedy in admiralty would be taken away by the new fact, that the duration and extent of the lien may have been lawfully regulated by state legislation. Such is the case. The general maritime law recognized in the fourteenth admiralty rule, gives pilots a lien upon the ship; the state has the right to regulate the subject-matter, and declares that a pilotage contract is complete when a due demand has been made and rejected; can there be a doubt that the pilot thereupon has a lien upon the ship, by the general maritime law, to enforce this valid contract? If so, he surely does not lose it, because the state tries to help him to

it. If he does, then he must equally lose his lien for pilotage actually performed; for they stand on the same foundation, and are given by the same clause of the statute. My opinion, therefore, is, that, as this case comes within the fourteenth rule, * * * this court has jurisdiction to enforce a state lien; and if this were not so, that a lien is implied or results from a valid contract for pilotage, unless, as in the case before Judge Sprague (The Robert J. Mercer), the law expressly or by implication denies it. Taken either way, there is a lien which gives the right to proceed here against the vessel."

But I do not admit the conclusion which may be drawn from a remark in the foregoing quotation, that a state in the exercise of its permitted power to regulate the subject of pilotage, could deny a pilot a lien upon a vessel for his services, contrary to the general maritime law, and thus deprive the courts of admiralty of jurisdiction of suits in rem to enforce claims for pilotage.

Nor, if such power were to be admitted, do I construe the statute of Oregon giving half pilotage, either from the fact of its silence upon the subject of a lien for pilots' services, or because it gives the contingent and cumulative remedy against the consignee, as impliedly denying a lien for pilotage. The true view of the matter, it seems to me, is, that the state law creates the debt, demand or claim for half pilotage on account of services tendered the ship and refused, and implies a contract to pay for the same whatever the statute allows and prescribes; and that a valid, legal claim for pilotage being thus established, it comes within the rule of the maritime law, and becomes a lien upon the ship for which a suit in admiralty may be maintained.

[NOTE. On the trial, the libel was dismissed (Case No. 2,313), and the decree of dismissal was subsequently affirmed by the circuit court in an unreported decision.]