THE WILLIAM LAW.

*(District Court, D. Delaware. 1882*

1. PILOTAGE—REGULATIONS—AUTHORITY OF STATE OF DELAWARE.

The act of 1789 had the effect to confer on the state of Delaware authority over the subject of pilotage on the navigable waters within her limits, and while she could not pass any law excluding the duly-qualified pilots of adjoining states on the same waters, she could impose such regulations as she deemed conducive to the public welfare upon pilots licensed under her laws.

2. SAME—OFFER OF SERVICES—HALF PILOTAGE.

The breakwater in Delaware bay constitutes, within the act of congress and the usages of navigation, a "port," in the proper and maritime sense of the term, and the offer of a Delaware pilot to take a vessel from sea into the breakwater is the exercise of a legitimate authority on his part, and the refusal of the vessel to accept his services entitled the pilot to half pilotage according to the state law.

3. SAME—RECOVERY—REMEDY IN REM.

Where the state law, in a distinct and separate clause, gives the alternative of proceeding to recover pilotage by a libel in admiralty in any United States district court, and where, by rule 14 of the general rules in admiralty adopted by the supreme court of the United States prior to the passage of such state law, it is clearly indicated that the libelant in a suit for pilotage may elect to proceed *in rem* or *in personam,* the remedy *in rem* is proper in suits brought under the state statute.

In Admiralty. Libel for half pilotage.

*George Gray* and *E. G. Bradford, Jr.,* for libelant.

*J. Morton Henry* and *H. G. Ward,* for respondent.

BRADFORD, D. J. This is a claim for half pilotage under the act of the general assembly for the state of Delaware, for refusing to take the libelant, a duly-licensed first-class pilot, who offered his services to pilot the said vessel from a point to the north-east of Cape Henlopen light-house to the Delaware breakwater, to which place she was bound for orders.

The facts of this case are admitted as set forth in the libel.

The act above referred to, bearing upon this case, is in the following words:

"Sec. 18. The fees for pilotage are hereby established as follows: * * * For every vessel drawing over 12 feet, and not more than 15 feet, $4.16 per foot. * * * Every ship or vessel bound to the breakwater for orders shall pay pilotage fee as follows: A sum equal to half pilotage to the port of Philadelphia. * * *"

Section 5 provides that—

"Every ship or vessel propelled by steam or sails, arriving from or bound to any foreign port or place, except such as are solely coal-laden, passing in or out of the Delaware bay by way of Cape Henlopen, shall be obliged to receive a pilot; that every such ship or vessel bound for the Delaware breakwater for orders, and not proceeding further up the Delaware bay, shall be obliged to receive a pilot, provided she is spoken, or a pilot offers his services, outside of the Cape Henlopen light-house, bearing south-west; and if the master of any of the said ships or vessels, after she is spoken or a pilot offered, shall refuse or neglect to take a pilot, the master, owner, or consignee of such vessel shall forfeit and pay to any such pilot suing for the same a sum equal to the pilotage of such ship or vessel, to be recovered by suit in our state courts or before a justice of the peace, or such pilot may pursue his remedy therefor by a libel in admiralty in any United States district court, as such pilot may see fit and proper to do."

The general facts as admitted are—

(1) That the libelant, Chambers, was a duly-licensed first-class pilot under the laws of Delaware at the time, on June 26, 1881.

(2) That on the last-named day the British ship William Law, being then bound from Antwerp, Belgium, to the Delaware breakwater for orders, not in ballast nor solely coal-laden, appeared off Cape Henlopen light-house, and bearing E. N. E. from the same, and being outside of said light-house between six and seven miles, bearing S. W. from the said vessel.

(3) The libelant offered his services to the master of said ship to conduct her to the Delaware breakwater, but the latter then and there refused to take the libelant as a pilot to conduct said ship to the breakwater aforesaid,

although said ship then had no pilot on board of her, and the libelant was the first to offer himself as pilot.

(4) Immediately after said refusal the vessel proceeded without any pilot to the Delaware breakwater, and there awaited for and received orders before proceeding up the Delaware bay.

(5) Said ship drew 13 feet of water.

(6) The course which the ship must have taken to get to the breakwater from the place where she was spoken by the libelant was exclusively within the jurisdiction of the state of Delaware.

We will first consider the powers of the state of Delaware to pass pilotage laws.

As far back as 1789 an act of congress containing the following provisions was passed:

"Until further provision is made by congress, all pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the states respectively wherein such pilots may be, or with such laws as the states may respectively enact for the purpose." Section 4235, Rev. St.

The applicability of this act to the state of Delaware has been long since recognized by a decision of the United States supreme court in *Cooley* v. *Board of Port Wardens,* 12 How. 299; also in the case of *Steam-ship Co.* v. *Joliffe,* 2 Wall. 450; in the former of which cases the court says the regulation of the whole matter is left to the respective states, in the absence of any congressional action or limitation. This matter has been elaborately discussed by the learned judge of the United States district court for the eastern district of Pennsylvania, in *The Clymene,* 12 FED. REP. 346, in which he says:

"The first of these statutes (act of 1789) conferred upon the state of Delaware (if she had it not before) authority over the subject of pilotage on the navigable waters within her limits; such at least, was its effect."

In these views this court fully concurs. It will thus appear that under the provisions of the act of congress above quoted, Delaware had full authority to regulate pilotage services within her navigable waters; and while she could not pass any law excluding the duly-qualified pilots of adjoining states on the same waters, she could impose such regulations as she deemed conducive to the public welfare upon the pilots licensed under her own laws.

Assuming the facts to be as stated in the libel and answer, as to the location of the vessel and her relative position to the breakwater, I have no hesitation in deciding that the breakwater constituted, within the meaning of the act of congress and the usages of navigation, a "port," in the proper and maritime sense of the term. More-

over, that it was just as necessary for the safety of vessels and the due preservation of commerce, that there should be as proper a provision for their safe convoy and arrival at that place as at any other port on the seaboard. It follows, therefore, that the offer of the Delaware pilot to take the said vessel into the breakwater was an exercise of legitimate authority on his part, and that the refusal of the vessel to take the pilot was in violation of the law, for which the pilot had his remedy.

It has been decided that an offer to pilot a vessel, with a present capacity to perform the duty, which is refused by the vessel, is equivalent in point of law to the actual performance of the service, and entitles the pilot to the same compensation as if he had actually performed it. *Ex parte McNeil,* 13 Wall. 236; *Steam-ship Co.* v. *Joliffe,* 2 Wall. 450; *Cooley* v. *Board of Wardens,* 12 How. 299; *The California,* 1 Sawy. 463. Any attempt by legislation of the state of Delaware to exclude a first-class pilot, licensed under the laws of Pennsylvania or New Jersey, is without doubt inoperative and void. This view has been expressed by Judge BUTLER in a recent decision before referred to, in *The Clymene.** Nor do we understand that any such right is claimed in the present instance. It will also be observed, as before said, that in the course of this vessel from the place where she was spoken by the libelant to the breakwater, she passed over no other territory than that within the jurisdiction of the state of Delaware.

We think enough has been said to show that the service performed by the libelant entitles him, under the laws of the state of Delaware, to his claim for half pilotage.

The respondents urge, that admitting the right of the state of Delaware to regulate the conduct of pilots licensed under her own laws, they have no right to compel vessels passing up the bay and bound to the port of Philadelphia to accept any other pilot than those they see fit to elect, and that such an act would be an unwarranted interference with the free exercise of commercial rights of adjacent states. Under the state of facts as disclosed by the pleadings we do not think it requisite to decide this question, for, in point of fact, this vessel was bound to the breakwater for orders, to which place she proceeded and anchored, so that the whole scope of action of the libelant was confined to the Delaware waters, within the exclusive jurisdiction of the state. In this view of the case it is evident that

*See 12 FED. REP. 346.

the question of compulsory pilotage upon vessels bound to the port of Philadelphia does not arise.

Admitting the libelant's right to recover half pilotage by virtue of the laws of Delaware, whose validity is affirmed by the act of congress, the next question is, has he pursued the proper remedy?

It is contended that the only proceeding authorized by the statute in question is an action *in personam* against the master, owner, or consignee, and not *in rem* against the vessel.

It is contended that while the Delaware statute gives a right of recovery, it nowhere gives in express terms the right to proceed *in rem*, and by reason of this omission the libelant is barred from this remedy. The distinction between the right which is created by the statute, and the remedy to enforce that right by a proceeding *in rem*, is insisted upon. The words of the statute creating the right and pointing out the remedy are as follows:

"Sec. 5. And be it further enacted that every ship or vessel propelled by steam or sails arriving from or bound to any foreign port or place, except such as are solely coal-laden, passing in or out of the Delaware bay by way of Cape Henlopen, shall be obliged to receive a pilot; that every such ship or vessel bound to the Delaware breakwater for orders, and not proceeding further up the Delaware bay, shall be obliged to receive a pilot, provided she is spoken, or a pilot offers his service outside of the Cape Henlopen light-house bearing south-west; and if the master of any of the said ships or vessels, after she is spoken or a pilot offered, shall refuse or neglect to take a pilot, the master, owner, or consignee of such vessel shall forfeit and pay, to any such pilot suing for the same, a sum equal to the pilotage of such ship or vessel, to be recovered by a suit in our state courts or before a justice of the peace, or such pilot may pursue his remedy therefor by a libel in admiralty in any United States district court, as such pilot may see fit and proper to do."

The supreme court of the United States has already decided, in the case *In re Walter & Hagar*, that the service performed was a pilotage service, and as such was within the admiralty jurisdiction of this court; and while it expressed no opinion as to the remedy which was to be pursued, it left that matter open to be determined by the authorities and practice in courts of admiralty. The fourteenth general rule in admiralty established by the supreme court indicates clearly that the libelant in suits for pilotage may elect to proceed *in rem* or *in personam*. We think it may be as fairly inferred from an examination of the Delaware statute that the remedy by an action *in rem* was contemplated by them as a proper one, for in addition to giving the personal remedy against the master, owner, or consignee, cognizable by state courts, in a distinct and separate clause, it gives

the alternative of proceeding to recover the pilotage by a libel in admiralty in any United States district court. We can see no valid reason, after this power to proceed by a libel in admiralty is fully given, why this jurisdiction should be abridged of one of its most efficacious remedies. As has been said, there is nothing to indicate that such was the intention of the legislature. The rule of the supreme court referred to was promulgated in pursuance of the act of the twenty-third of August, 1842, c. 188, and the Delaware statute giving admiralty jurisdiction was passed during the last session of the legislature, on April 5, 1881, and it is fair to suppose that it was meant to be in harmony with the rule of the supreme court referred to.

As a result of the whole matter, we conclude that the libelant is entitled under the laws of Delaware to receive the sum of money due him for half pilotage, and that he has selected a suitable and legal remedy by proceeding *in rem* in the district court of the United States in admiralty, and shall order a decree to be entered accordingly.

See *The Lord Clive*, 10 Fed. Rep. 135; S. C. 12 Fed. Rep. 81; *The Glaramara*, 10 Fed. Rep. 678; *The Whistler*, 13 Fed. Rep. 295.