## The Alzena.[*]

*(District Court, E. D. Pennsylvania. October 13, 1882.)*

1. PILOTAGE—CONSTITUTIONAL LAW—AUTHORITY OF STATE.

A pilot licensed by the state of Delaware may recover the fees provided by the statute for pilotage services tendered to a vessel on a voyage from a foreign port up the Delaware bay and river to the port of Philadelphia, although the services were refused, and notwithstanding a statute of Pennsylvania prohibiting any one from acting as such pilot without a Pennsylvania license.

   *The Clymene,* 9 FED. REP. 165, and 12 FED. REP. 346, followed.

2. LIBEL—APPROPRIATE REMEDY FOR FEES FOR PILOTAGE SERVICES TENDERED AND DECLINED.

A libel *in rem* may be maintained for fees allowed for pilotage services tendered in accordance with the provisions of a state statute but declined by the master.

In Admiralty. Hearing on libel and answer.

*Reported by Albert B. Guilbert, of the Philadelphia bar.

This was a libel by John H. Truxton, a pilot licensed under an act of assembly of the state of Delaware, approved April 5, 1881, against the schooner Alzena, setting forth that on March 15, 1882, he tendered his services as a pilot to the schooner Alzena, sugar laden, then outside of the breakwater, on a voyage from a foreign port up the Delaware bay and river to the port of Philadelphia; that by the provisions of the said act of the state of Delaware the vessel was bound to accept the services of the first pilot who offered, and in case of refusal was liable to him in a sum equal to the pilotage fees, and that the same might be recovered by a libel in admiralty. Though the libelant was the first pilot who offered himself to said schooner, his services were declined by her master, who refused to take a pilot or to pay the libelant his fees. The answer sets forth that the laws of the state of Pennsylvania exempt all vessels from the obligation to take a pilot after they have crossed a straight line drawn from Cape May light to Cape Henlopen light, and denied the right of the state of Delaware to compel vessels bound to and from the ports of Pennsylvania to take her pilots, and the right of libelant to maintain an action *in rem*.

*Curtis Tilton* and *Henry Flanders*, for libelant.

*H. G. Ward* and *M. P. Henry*, for respondent.

BUTLER, D. J. The decision in *The Clymene*, 9 FED. REP. 165, and 12 FED. REP. 346, covers everything embraced in this case, except the question of remedy; and this must be determined against the respondent. In view of the following authorities no discussion seems necessary: *The America*, 1 Low. 178; *The California*, 1 Sawy. 463; *The George S. Wright*, 1 Deady, 591; *The Glencarne*, 7 FED. REP. 604.

A decree must be entered in favor of the libelant.

McKENNAN, C. J., sat on the argument, and concurred in above opinion

---

PILOTAGE. The power of congress to legislate on any subject is exclusive only when a uniform rule is required; but where it requires rules in different localities, the state may legislate in the absence of congressional legislation.(a) It is exclusive only when exercised.(b) Or where the subject is national, and

(a) Cooley v. Board of Port Wardens, 12 How. 299; Gilman v. Philadelphia, 3 Wall. 713; Ex parte McNeil, 13 Wall. 240; Pound v Turck, 95 U. S. 462; Mitchell v. Steelman, 8 Cal. 363; Cran-

dall v. Nevada, 6 Wall. 35; People v. Cent. Pac. R. Co. 43 Cal. 404.

(b) Ogden v. Saunders, 9 Wheat. 1; Passenger Cases, 7 How 283; Master v. Ward, 14 La. Ann. 289; Master v. Morgan, Id. 595.

admits of only one plan of regulation.(c)   Or in cases where the states are expressly prohibited.(d)   It is not so exclusive as to prevent states from enacting laws necessary to internal police.(e)   The commercial clause in the federal constitution does not operate as an absolute prohibition on the states to legislate on the subject.(f)   The mere grant of power to congress to regulate commerce does not forbid states from passing laws on the same subject.   They have concurrent power on the subject.(g)   And so a territory may legislate, it being "a rightful subject of legislation."(h)

The grant to congress by the constitution of the power to regulate commerce does not of itself deprive the states of the power to regulate pilots; and congress has not by legislation deprived the states of their power to legislate on the subject,(i) but, on the contrary, state laws have been confirmed.(j) But existing regulations or provisions making discrimination in the rates of pilotage between vessels sailing between the ports of different states, or any discrimination against steam-vessels or national vessels, are annulled and abrogated.(k)   So states may pass laws for the regulation of pilots, if they neither give a preference, of one port over another, nor require vessels to pay duties.(l)   The statutes of the several states regulating the subject of pilotage, in view of the numerous acts of congress recognizing and adopting them, are to be regarded as constitutional, until congress by its own acts supersedes them;(m) but they are immediately abrogated when an act is passed by congress which conflicts with them.(n)   But the passage of congressional acts regulating pilots does not release pilots from the penalties incurred under state laws.(o)—[ED.

(c) Cooley v. Board of Port Wardens, 12 How. 299.

(d) In re Brinkman, 7 Bank. Reg. 425.

(e) Com. of Pilotage v. The Cuba, 28 Ala. 185.

(f) Id.

(g) Cooley v. Board of Port Wardens, 12 How. 319; People v. Coleman, 4 Cal. 46; Cisco v. Roberts, 6 Bosw. 494; Dryden v. Com. 16 B. Mon. 598.

(h) Edwards v. The Panama, 1 Or. 418.

(i) Cooley v. Board of Port Wardens. 12 How. 299.

(j) Act of Congress of August 7, 1789, § 4, (1 St. at Large, 54.)

(k) Act of July 13, 1866, (14 St. at Large, 93.)

(l) Cooley v. Board of Port Wardens, 12 How. 299; The Wheeling Bridge Case, 18 How. 421.

(m) Ex parte McNeil, 13 Wall. 236.

(n) The Panama, Deady, 27.

(o) Sturgis v. Spofford, 45 N. Y. 446.