[Filed January 21, 1887.]

## THOMAS NEIL v. JAMES WILSON.

CONSTRUCTION OF STATUTE — STATES AND TERRITORIES — PILOTAGE.—The word "States," as used in the act of Congress of March 2, 1837, concerning pilotage on navigable waters forming the boundary of different states, comprehends territories, as being within the mischief which the statute was designed to remedy; and the act of the legislature of this state regulating pilotage on the Columbia river must be construed in subordination to said act of Congress.

PILOTS AND PILOTAGE.—When a vessel which has been piloted in over the bar of the Columbia river to Astoria by an Oregon pilot, on her outward-bound voyage employs a Washington Territory pilot to take her to the open sea, notwithstanding a tender by the former of his services for such purpose, the first is not thereby entitled to collect the full pilotage fees allowed by the local law.

*T. R. McBride* and *Noland & Dorris,* for Appellant.

The appellant having offered his services and having been rejected, his right of action is complete. (1 Sedgwick, Meas-

ure of Damages, 451 [211] ; *Shannon* v. *Comstock*, 21 Wend.
457 ; *Taylor* v. *Bradley*, 39 N. Y., 129 ; Moak's Van Sant.
Pl. *288.) Upon the tender of pilot service and refusal by the
master to accept the same, a right of action accrues to appel-
lant. Rendition of some service is not necessary. (*The Fran-
cisco Gargulio*, 14 Fed. Rep. 495 ; *The William Law*, 14 Fed.
Rep. 795.) Under the circumstances of this case an offer to
perform, accompanied by present ability to perform, is deemed
by law equivalent to performance. (*Cooley* v. *Board of War-
dens of Philadelphia*, 12 Howard, *312; *The William Law*, 14
Fed. Rep. 795 ; *The California*, 1 Sawyer, 467.) A pilot li-
censed under the laws of Washington Territory is not entitled
to the privileges, in an Oregon port, of one licensed under the
laws of Oregon. The Columbia river is not the boundary
between " *two states*," and a pilot from W. T. is not *licensed
or authorized by the laws of either state bounded on such
waters.* (*The Corporation of New Orleans* v. *Winter et al.*,
1 Wheat. *92 ; *Hepburn and Dundas* v. *Ellzey*, 2 Cranch,
*445 ; *Barney* v. *Baltimore*, 6 Wall. 287.) Words should
not be imported into statutes not to be found there. Such
mode of interpretation only gives occasion to endless difficulty.
(Sedgwick on Const. of Statutes, 243, 244, 245, 246; and see
Am. Law Review, May–June, 1883, 372.)

*C. W. Fulton*, for Respondent.

That said Sec. 33 of the "Pilot Act" of this state, and simi-
lar statutes, are in conflict with the act of Congress, has been
frequently adjudged in the federal courts. (*The Abercorn*, 26
Fed. Rep. 877 ; *The Ullock*, 19 Fed. Rep. 207, 211 ; *The South
Cambria*, 27 Fed. Rep. 525 ; *The Clymene*, 9 Fed. Rep. 164,
and 12th, 346 ; *Flanigen* v. *Washington Ins. Co.*, 7 Pa. St.
311 ; *The Alzena*, 14 Fed. Rep. 174 ; *The Panama*, 1 Deady,
31.) It is true, it has been held that in construing the judi-
ciary act the term " States," as used in the clause in the federal
constitution granting to the federal courts jurisdiction in cases

of " controversies between citizens of different states,"does not confer jurisdiction upon such courts of a case between a citizen of a territory and a citizen of a state. The soundness of the doctrine has often been questioned, and it is believed by many that if the question were an open one, a different construction would be given that clause by the same court. But in any event, the reasoning which led to that conclusion does not apply to the statute in question.

LORD, C. J.—This is an appeal from a judgment on demurrer to the plaintiff's complaint. The action was brought to recover the sum of $161 for half pilotage. In substance, the facts alleged are : That the plaintiff is a duly licensed Oregon pilot, attached to the pilot schooner " Governor Moody "; that the defendant is the master of the British barque Clan Ferguson ; that on the 17th day of January, 1886, the plaintiff piloted said barque over the bar of the Columbia river into Astoria ; that on the 11th day of March, 1886, the said barque being then on her outward-bound voyage, the plaintiff tendered and offered his services as a pilot to conduct and navigate said barque from the port of Astoria, over the bar and bar-pilotage ground, to the open sea; and that defendant refused the services of plaintiff as such pilot, etc.; that upon such refusal, plaintiff demanded his fees, amounting to the sum of $161; that at the time the plaintiff offered his services, the defendant had not engaged a pilot to navigate said barque to the open sea ; that the defendant has engaged another pilot, Charles Johnson, licensed by the board of pilot commissioners of Washington Territory, to pilot said barque from Astoria over the bar-pilotage ground, and to the open sea, etc.

By the act of 1882, it is provided that " a pilot who brings a vessel in over Columbia river bar, is entitled to pilot her to the sea when next she leaves the river   *   *   *   but if the master or owner of such vessel desires another pilot, the board may provide for allowing him to take another pilot from the same boat." (Laws, 1882, Sec. 33, 21.) By section 30 of the same act, it is also provided that if such pilot's offer of service

is refused by the master, he shall pay him half pilotage.   (Id. p. 20.)

Upon this state of facts, under these provisions of the Oregon pilot act, it is claimed that by the tender of the plaintiff's services as such pilot, and the refusal by the defendant to accept the same, a right of action accrued to the plaintiff for half pilotage.   To support this proposition two authorities are mainly relied upon, viz:  *The William Law*, 14 Fed. R. 793, and the *Glenearne*, 7 Fed. R. 606 ; but the facts in neither are parallel with the facts in hand.   In the first it was said by the court that it had been decided that an offer to pilot a vessel, with a present capacity to perform the duty, which is refused by the vessel, is equivalent in point of law to the actual performance of the service, and entitled the pilot to the same compensation as if he had actually performed it.   (*Ex parte McNiel*, 13 Wall. 236 ; *Steamship Co.* v. *Joliffe*, 2 Wall. 450 ; *Cooley* v. *Board of Wardens*, 12 How. 299 ; *The California*, 1 Saw. 463.)   But the court is careful to add : " It will be observed that in the course of this vessel from the place where she was spoken by the libellant to the breakwater, she passed over no other territory than that within the jurisdiction of the state of Delaware."

In the second case a part of the pilotage ground included the navigation of the Willamette river to Portland, which was exclusively within the jurisdiction of the State of Oregon. Deady, J., said : " When the *Glenearne* was at Astoria, bound up the Columbia river, she was on pilotage ground subject to the laws of both Oregon and Washington, and might so far take a pilot from either, after declining the services of one from the other, without becoming liable for half pilotage to the latter.   And so far as the navigation of the Columbia river is concerned, this is a sufficient answer to the libellant's claim, independent of the fact that the Washington Territory pilot first offered his services.   But the *Glenearne* was then bound on a voyage to Portland, which involved the navigation of the Willamette river for a distance of twelve miles."   And this portion of the pilotage ground, like

the case of *The William Law*, *supra*, being within the exclusive jurisdiction of the State of Oregon, no other than a duly licensed pilot of the state was qualified to act, because the act of Congress of March 2, 1837, did not apply to it. Hence the result reached in these cases.

But here the barque was outward bound, and in waters that are the boundary between Oregon and Washington Territory, and consequently, on pilotage ground subject to the laws of both, and to which the act of Congress of March, 2, 1837, does apply. That act provides : " That it shall be lawful for the master or commander of any vessel coming into or going out of any port situate upon the waters which are the boundary between two states, to employ any pilot duly licensed or authorized by the laws of either of the states bounded on said waters to pilot said vessel to or from said port ; any law, usage or custom to the contrary notwithstanding."

But to avoid the effect of this, it is argued that the act only refers to waters which are the boundary between two *states*, and not between a state and territory, to which it can have no application within the meaning of the word as used in the act, or as expounded by the Supreme Court of the United States. A state, it is said, is not a territory within the purview of the constitution, nor so understood in ordinary acceptation, or by judicial construction of any court of last resort. That unless the word " State " is synonymous with and imports the same thing as " territory," it cannot have the same meaning and effect, without construing the statute beyond the intention of the legislature, which it is not the province of the court to do. The decisions cited in support of this view were constructions of the judiciary act, under that clause of the constitution which provides that " the judicial power shall extend to all cases in law and equity * * * between citizens of different states," Sec.  Art. 3, and in which it was held that a territory was not a " state, in the sense in which the term is used in the constitution," for the purpose of conferring jurisdiction on such courts in a case between a citizen of a territory and a citizen of a state. (*The Corporation of New Orleans* v.

*Winter et al.*, 1 Wheat. 92; *Hepburn* v. *Ellzey*, 2 Cranch, 445.) But the cases are not alike. It is well known that the act of Congress of 1873, *supra*, was enacted to neutralize or remedy the effect of conflicting laws of adjoining jurisdictions, or states on navigable waters which were their common boundaries. Such being the object of the law, it matters not whether it be a state or territory. If it be authorized or allowed to legislate upon the subject matter out of which the conflict arose, and which the act of Congress was intended to remedy, it is a state in that sense, and within the purview of the act.

Now, the Columbia river is the common boundary between Oregon and Washington Territory. In the absence of congressional legislation to the contrary, both are permitted to pass pilotage laws for the navigation of their common boundary. The state and the territory, or the two jurisdictions, are therefore capable of producing that state of facts—the mischief—which the act of Congress was designed to remedy. And if this be so, the act must apply to one as much as the other.

In *The Panama*, 1 Deady, 33, it is said : " Whether the word ' State,' as used in this act, should be construed so as to include a territory, is a question not free from doubt. The case is within the *mischief* intended to be remedied by the act, and it seems to me might be held to come within its spirit and purview without any violation of principle. I do not think it comes within the reasoning or considerations that controlled the court in *Hepburn* v. *Ellzey*, 2 Cranch, 445, in which it was held, under the judiciary act giving the national courts jurisdiction of controversies between citizens of different states, that a citizen of the District of Columbia could not sue in such court as a citizen of a state, because such district was not a member of the Union." And later, the same view was more elaborately expressed in *The Ullock*, 19 Fed. Rep. 207, Mr. Justice Deady saying: " But the special reason for this narrow construction of the word ' State ' does not apply to this case. Congress had the power to extend the act of 1837 over a water constituting the boundary between the State of Oregon and the Territory of Washington. The language actually used in

the act may be reasonably construed so as to accomplish this object, and the case is within the mischief intended to be remedied thereby. The master of The Ullock being then entitled, upon this construction of the law, to take a pilot from either Oregon or Washington, without reference to which made the first offer of his services, the libellant is not entitled to recover as for an offer and refusal of pilot services, even though such offer was duly made."

To my mind, the reasoning of these authorities is incontrovertible, and it would be a work of supererogation to further elaborate it. It follows, then, that the act of Congress is applicable to the pilotage ground on the Columbia river, which is the boundary line between the State of Oregon and Washington Territory. And this being so, we cannot better express our own view, than by adopting the language of Mr. Justice Deady in the late case of *The Abercorn*, 26 Fed. Rep. 877, which involves the identical question upon the same state of facts as presented here. " As between the Oregon pilots, doubtless the regulations compelling the master of a vessel to take the pilot out of the river that brought him in is valid and binding ; but the state cannot compel a vessel in the Columbia river to take an Oregon pilot under any circumstances, or to pay him half or any pilotage, if the master prefers to and does take a Washington pilot. The matter is too plain for argument, and only needs to be stated to be understood. The act of Congress is paramount, and no regulation of the state can impair or limit its operation. As applied to the facts and circumstances of this case, it declares, in effect, that the master of any vessel, whether bound in or out of the Columbia river, may take a pilot from either Oregon or Washington, without any reference to the fact of which offered his services first, or whether either of them had served as pilot on the vessel before."

See also *The South Cambria*, 27 Fed. Rep. 525.

Such being the meaning of the act and the construction given to it, we cannot do otherwise than affirm the judgment.