Owen J.
The defendant maintains that by the acts authorizing the construction of the proposed bridge, it is charged *632 with the duty of considering and approving or disapproving the location as well as the plan of it. These acts seem clearly to leave its location entirely with the commissioners. The respondent says, however, that section 4937 of the Revised Statutes so far qualifies the provisions of the special bridge acts as to make its consent in writing “ for the model and location” of the bridge prerequisite to its construction. This claim is well made if this section is to exert a controlling effect upon the provisions of the bridge acts. The provisions of this section were first substantially enacted April 16, 1874 (71 O. L. 84), and amended March 24, 1875 (72 O. L. 110), while the power to determine the location of the bridge was confided to the commissioners by the amendatory and supplementary act of April 3d, 1876 (73 O. L. 274). To give to section 4937 the effect claimed for it, it is to be regarded as having all the force of an original enactment as of the date of the last revision of the statutes— January 1st, 1880, and to work the repeal of all inconsistent or conflicting legislation. It should be borne in mind that the act for the revision and consolidation of the statutes related only to the statutes of a general nature. The acts authorizing the construction of the proposed bridge were special and local and have not been repealed nor otherwise affected, unless’ by an implication raised by the section in question.
Repeals by implication are not favored. So, particular and positive provisions of a prior act are not affected by a subsequent statute treating a subject in general terms and not expressly contradicting the provisions of the prior act, unless such intention is clear. Perrysburg v. Fosdick, 14 O. S. 472; Knox Co. v. McComb, 19 O. S. 320, 346; Shunk v. First National Bank, 22 O. S. 508, 515; Olds v. Franklin Co. 20 O. S. 421; Allen v. Russell, 39 O. S. 336.
The decided weight of authority supports the proposition that when there is a general act and also one local and special on the same subject, in conflicting terms, neither necessarily abrogates the other, but both are permitted to stand together, and it is immaterial which is of the later date. Bishop on ike Written Laws, 112 b.; Crane v. Reeder, 22 Mich. 322; People v. Quigg, 59 N. Y. 83.
*633 If the legislative intent that the general law shall supersede the local and special act is clear, it will of course prevail. No such intent being manifest in the present case, we conclude that the provisions of the acts under which the commissioners are proceeding must prevail, and that the location of the bridge was a subject confided exclusively to them.
Another defense relied upon by the defendant is that the proposed bridge will obstruct the navigation of the Muskingum River (as improved by the canal) and, being a navigable stream, the ordinance of 1787 protects it from obstruction by any act of the State. This ordinance declared that: The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between them, shall be common highways and forever free, as well to the inhabitants of said territory as to the citizens of the United States and those of any other State that may be admitted into the confederacy, without any tax, impost, or duty therefor.”
The case of Hogg v, Zanesville Carnal and Manufacturing Co., 5 Ohio, 410, is relied upon as supporting this claim.
The later case of Hutchingson v. Thompson, 9 Ohio, 52, established the broader doctrine that the clause of the ordinance above quoted “ did not prohibit the States formed out of that Territory from legislating with respect to those rivers, or affecting their navigation, when the regulations subjected equally their own citizens and the citizens of other States to the inconveniences resulting from such legislation.”
Although the ordinance was passed one year and nearly eight months before the federal constitution took effect, some of the earlier cases proceeded upon the assumed superiority of the former to the latter respecting the navigable waters within the territory originally affected by the ordinance.
The doctrine now firmly established is that over the navigable waters within the boundaries of these States, Congress, in the assertion of its power under the constitution to regulate commerce among the several states, may exercise control to the extent necessary to protect, preserve and improve their free navigation, but that while this power remains dormant and *634 until that body act, the states have plenary authority over bridges across them, and that there is nothing in the ordinance of 1787 that precludes them from exercising tüat authority. Wilson v. Blackbird, Creek Marsh Co. 2 Pet. 245; Gilman v. Philadelphia, 3 Wall. 713; Welton v. State of Mo. 91 U. S. 275; Pound v. Turck, 95 U. S. 459; Escanaba Co. v. Chicago, 107 U. S. 689.
Concerning the navigation of the Mnsldnguin River, Congress has never exercised its authority by legislation.
This leaves the State of Ohio with plenary power to act concerning this as well as the other highways to be affected by the proposed bridge.
That she has power to require one public easement to yield to another more important, is a principle well established. Hickok v. Hine, 23 O. S. 523. To the state, then, is confided the office of determining whether any and what obstruction to the navigation of the Muskingum River, and of the canal as an improvement of it, would result from the construction of the bridge. We do not, nor are we required to, assume that the state has power to obstruct the navigation of the waters to be traversed by the proposed bridge. The state has acted. By the special acts under which the commissioners are proceeding, she has prescribed the duties of the commissioners and the board of public works, respectively. It is to be supposed that the effects of the proposed bridge upon the highways to be affected by it were the subjects of consideration and determination at the time of the passage of the acts authorizing it, and the inquiry is a pertinent one : What standing has the defendant in this court to tender the issue in this case, that the bridge will obstruct navigation. It should be borne in mind that a canal is to be bridged and not simply a navigable river. True, it is with it as an improvement of the river we are dealing; but it is as one of the “public works ” of the state, and not as a navigable river that the defendant is at all concerned in it. It is claimed for and by the defendant that it is the creature of the constitution and derives therefrom its power of control over the public works of the state, and with this its right to challenge, in this proceed *635 ing, the conduct of the state in authorizing the construction of the proposed bridge. ■
•The constitution (Art. 8, Sec. 12) provides: “ So long as this state shall have public works which require superintendence, there shall be aboard of public works * * Sec. 15, of the same article provides: “ The powers and duties of such board of public works * * * shall be such as now are or may be provided by law.”
“ The board of public works possesses no powers except such as are expressly conferred by law, or as are necessarily implied.” Johnson, J. in State v. Ry. Co. 37 O. S. 174. The defendant must look to the acts of the general assembly for direction concerning its powers and duties. The acts authorizing the construction of the proposed bridge, point out the duty of the boárd of public works in regard to it, which is that it examine and consider, with a view to its approval or disapproval, the ‘ ‘ plan ” of the bridge presented by the commissioners, without regard to the question of location.
Having refused to do this, a peremptory writ will issue, according to the prayer of the petition.
Johnson, C. J. did not sit in the case.