## UNITED STATES v. BELLINGHAM BAY BOOM CO.

(Circuit Court, D. Washington, N. D. February 20, 1896.)

RIVERS AND HARBORS—OBSTRUCTION TO NAVIGATION—ACT CONG. SEPT. 19, 1890.
    Section 10 of the act of congress of September 19, 1890, providing for the removal of unlawful obstructions to navigable waters, does not authorize the courts to decree the removal of a boom in a small navigable river, which, at the time of its construction, prior to the passage of the act, was fully authorized by the legislature of the state within which

·' the river lies, and which is necessary to the use of the river as a highway for floating logs from forests on its banks; the value of such logs being much greater than that of other products likely to be transported on the river, and the obstruction to navigation caused by the boom not being complete.

W. H. Brinker, U. S. Atty.

T. G. Newman, for defendant.

· HANFORD, District Judge. This is a suit in equity, by the United States, brought under direction of the attorney general, against the Bellingham Bay Boom Company, a corporation organized and existing under the laws of the state of Washington. The substantial averments of the bill are as follows.: That the Nooksack river is a navigable stream, which empties into Puget Sound, in Bellingham Bay, in the county of Whatcom, state of Washington, and its waters are navigable from its mouth a distance of several miles towards its source; that the said defendant, for a period of more than one year last past, has maintained, and continues to maintain, an obstruction in the navigable waters of said river at and near where it empties into Bellingham Bay, as aforesaid, such obstruction consisting of a boom in which logs floated down said river are stopped and moored, the boom being constructed in such manner as to blockade the river during a large portion of the year, rendering navigation thereon impossible during said time; that said river is used for navigation by steamboats and small craft, and that said defendant has not obtained permission of the secretary of war of the United States to continue or to maintain said boom, and the said boom was constructed and is maintained without the permission of the secretary of war, and is continued in said navigable waters aforesaid, without his consent. The prayer of the bill is for a permanent injunction, forbidding the further continuing or maintaining of said obstruction, or any part thereof, and for a mandatory injunction to cause the removal of said obstruction, and for general equitable relief.

The defensive matter contained in the answer is as follows: The defendant says that it became incorporated in the month of June, 1890, under and by virtue of an act of the legislature of the state of Washington entitled "An act to declare and regulate the powers, rights and duties of corporations organized to build booms, and to catch logs and timber products thereof"; that, under and by virtue of the said act and articles of incorporation adopted thereunder, power and authority were given defendant in the waters of the Nooksack river, in the state of Washington, to construct, maintain, and use all necessary sheer or receiving booms, dolphins, piers, piles, or other structure necessary or convenient for carrying on the business of the defendant in catching, booming, sorting, rafting, and holding logs, lumber, or other timber products, and to improve the Nooksack river so as to facilitate the business of logging, driving, rafting, sorting, booming, and holding logs, and protecting from loss those engaged in carrying on the same; that the construction and maintenance of defendant's boom were affirmatively authorized by the laws of the state of Washington in the month of June, A. D. 1890; that, under and by virtue of

said laws of the state of Washington, the said defendant, prior to the 19th day of September, A. D. 1890, did construct, erect, and maintain its boom for the business purposes aforesaid, in strict accordance with the laws of the state of Washington, and not otherwise, at the mouth of the Nooksack river, in the county of Whatcom, state of Washington, and has there continued to so maintain and operate its said boom up to this time. And defendant alleges that, in the construction and maintenance of said boom, it has expended a large sum of money, to wit, the sum of $50,000; that the Nooksack river is a small stream, lying wholly and entirely within the state of Washington, emptying its waters into Bellingham Bay, and navigable for but a few miles from its mouth, by small, light-draught water craft. Defendant denies that its boom is constructed in such a manner as to blockade said river during a large portion of the year, rendering navigation thereon impossible during said time, but alleges that at certain periods of the year, not to exceed twice in any one year, large quantities of brush, trees, and drift are by freshets and excessive high water carried down to the mouth of said Nooksack river, where the said brush, trees, and drift become lodged by reason of shoal water occasioned by the widening of said river and the deploying of its waters into the said Bellingham Bay. Defendant further alleges that, under and by virtue of the power and authority to improve said river vested in it by the laws of the state of Washington, it has from time to time, from the date of its incorporation up to the present time, and covering a period of more than four years, expended large sums of money, to wit, the sum of $2,500 per year, in the purchase of powder, tools, and labor for the improvement of said river, by removing the said brush, trees, and drift from the mouth thereof, and removing trees, snags, and drift from the channel thereof to a distance of 20 miles from its mouth. Defendant further alleges that by reason of the location and maintenance of its boom and of the improvement of said river, made by the defendant as aforesaid, the navigation of said river for boats and water craft has been greatly facilitated, and that, in the absence of such improvement to the navigation by defendant as aforesaid, the mouth of said river would become entirely obstructed by brush, trees, and drift, rendering navigation thereon totally impossible during the greater portion of the year; that immense forests of fir and cedar timber, of the market value of many millions of dollars, which constitute the chief wealth of Whatcom county, border and are tributary to the said Nooksack river and its branches, which said river is the natural and only outlet for most of said timber to the mills and market; that the commerce conducted and carried on upon said river by the transportation of goods, wares, and merchandise is, and always has been, trifling and inconsiderable in amount, and in value greatly inferior to that of the logs and timber products floated down said river to the mills and market; that, during the four years last past, the total value of all such goods, wares, and merchandise so transported upon said river has not amounted to more than $5,000; and defendant alleges that the market value of the saw logs and timber products floated down said river, and caught, sorted, boomed, and rafted at defendant's boom, during the same

period, amounts to $90,000; that the greatest and chief value of the said Nooksack river to the citizens of this and other states of the Union is its use as an outlet for floating saw logs and timber products to the mills and market; that none of the timber situate upon or tributary to the said river as aforesaid can be taken to the mills and market by floating down said river without the maintenance of a boom located at the mouth thereof for catching, sorting, booming, holding, and rafting the same; that there are a number of saw and shingle mills located on the shores of Bellingham Bay, which are largely dependent for their supply of saw logs upon logs floated down said river, and, if deprived of such source of supply, will suffer great damage and injury. The defendant further alleges that it has at all times maintained and operated its said boom in accordance with the laws of the state of Washington thereunto pertaining, and has always exercised great care that its said boom should not interfere with the navigation of said Nooksack river by boats and water craft navigating the same. To this answer a general replication was filed.

The evidence has been taken before an examiner, and reported to the court. At the time of introducing proofs, it was stipulated between the parties that the Nooksack river is a navigable stream, having its source in Whatcom county, and running through Whatcom county, to Bellingham Bay, emptying its waters into said bay, and is navigable from its mouth for a distance towards its source by light-water craft, and said river is wholly within said county. On the part of the government, 19 witnesses were called and sworn,—two steamboat captains, who have had practical experience in navigating the Nooksack river with small steamboats; one merchant; one proprietor of a sawmill; one fisherman; one school teacher; and a number of farmers and county officials. They all appear to have a general knowledge of the country through which the river flows, and the history of the settlement of the Nooksack valley; the testimony of said witnesses being in general to the effect that the piles driven to support the defendant's boom, and the boom itself, impede the passage of steamboats, and that it has a tendency to collect drift timber and cause shoaling at the mouth of the river, by detaining the silt and sand, and causing the same to form a bar, and that navigation of the river by boats is interfered with by the bar, and by jams of drift collecting therein, and by filling up of the channel. For the defendant nine witnesses were sworn and have testified, including steamboat men, engineers, and the persons who superintended the work done by the defendant in constructing the boom and clearing the river of jams and obstructions; and their testimony tends to prove the allegations of the defendant's answer as to the particular time when the boom was constructed, the condition of the river prior thereto, and the particular work and expenditures of the defendant in clearing the river of jams, and keeping it open for navigation. As to these disputed facts, the defendant's witnesses, having particular knowledge, are better able to testify intelligently, by reason of having made examinations and surveys, or being connected with the work done, than the witnesses for

the government, who speak only from a general knowledge. No engineer has been called by the government to testify as to facts ascertained by an actual survey.

Upon consideration of all the evidence, I find that, prior to the construction of the boom, trees and drift carried down the river by floods formed jams, which obstructed navigation, requiring labor and expense to keep the river open; and that the boom company, since commencing to construct the boom, at an expense of many thousand dollars, cut out, blasted, and removed all drift which prior to the commencement of this suit lodged in the vicinity of the boom, and kept the mouth of the river clear of obstruction other than the boom itself and the saw logs collected therein; and, by such expenditures and work, the company has rendered ample recompense for the impediment to navigation of the river by vessels, caused by its boom.

The boom was constructed in the summer of 1890, and completed prior to the 19th day of September, 1890 (the date of approval of the act of congress pursuant to which this suit was instituted); and the construction of the boom was duly authorized, as alleged in the answer, by an act of the legislature of the state of Washington approved March 17, 1890, which act authorizes the incorporation of boom companies, and section 3 provides:

"Such corporations shall have power and are hereby authorized, in any of the waters of this state or the dividing waters thereof, to construct, maintain and use all necessary sheer or receiving booms, dolphins, piers, piles or other structure necessary or convenient for carrying on the business of such corporations." Laws Wash. 1889-90, p. 470.

By uncontradicted evidence, it is shown that there are immense forests of timber, which, when cut into saw logs, can be brought to market in the most convenient way by floating down the Nooksack river, the value of which is many times greater than the probable value of other products which may be transported upon the river; and, to make the river available as a means for bringing timber to market, it is necessary to maintain a boom at its mouth.

In view of all the facts, and considering that this river is wholly within this state, I hold: First, that the legislature of the state had ample power prior to the enactment by congress of the river and harbor act of September 19, 1890, to authorize the construction of this boom, and that at the time of its construction it was authorized by law, and therefore not a nuisance, nor an unlawful obstruction of navigation; and, in the second place, that the chief value of the Nooksack river as a highway is for the floating of saw logs, and that persons and corporations having occasion to use it for that purpose have rights equal to the rights of others to use the river as a highway for boats and vessels, and that a boom at the mouth of the river necessary for gathering and holding saw logs is to be regarded as an aid to the use of the river for a lawful purpose, and entitled to protection the same as a wharf or pier constructed at a convenient place for the convenience of vessels.

In the case of Pound v. Turck, 95 U. S. 459–465, Mr. Justice Miller, in the opinion of the court, says:

"There are within the state of Wisconsin, and perhaps other states, many small streams navigable for a short distance from their mouths in one of the great rivers of the country, by steamboats, but whose greatest value in water carriage is as outlets to saw logs, sawed lumber, coal, salt, etc. In order to develop their greatest utility in that regard, it is often essential that such structures as dams, booms, piers, etc., should be used, which are substantial obstructions to general navigation, and more or less so to rafts and barges. But to the legislature of the state may be most appropriately confided the authority to authorize these structures where their use will do more good than harm, and to impose such regulations and limitations in their construction and use as will best reconcile and accommodate the interest of all concerned in the matter. And, since the doctrine we have deduced from the cases recognizes the right of congress to interfere and control the matter whenever it may deem it necessary to do so, the exercise of this limited power may all the more safely be confided to the local legislature."

It was unnecessary for the defendant to obtain permission of the secretary of war to construct this boom, for the very good reason that, when it was constructed, there was no law in existence requiring the permission of that officer. This bill seems to have been prepared under a supposition that the seventh section of the act of September 19, 1890, entitled "An act making appropriation for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes" (1 Supp. Rev. St. 2d Ed., p. 800), is retroactive in its effect, or at least, taken in connection with the tenth section of the same act, it renders all obstructions of navigable rivers not authorized by the secretary of war unlawful, and that the circuit court may require the same to be removed. But the seventh section, from its words, is clearly prospective, and must be so considered in its application to cases. And the tenth section does not make the maintenance of all previously constructed bridges, piers, docks, wharves, and similar structures erected for business purposes unlawful, nor authorize the removal of the same, but, on the contrary, makes an exception which, in my opinion, includes the boom in question. The first clause of the section is as follows: "That the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity of any waters in respect to which the United States has jurisdiction, is hereby prohibited." And it is only the continuance of such obstructions—that is to say, any obstructions not affirmatively authorized by law—which is made unlawful by the act, and that part of the section authorizing the courts by injunction to prevent and remove obstructions in navigable rivers provides that "the creation and continuing of any unlawful obstruction in this act mentioned may be prevented, and such obstruction may be caused to be removed by the injunction of any circuit court exercising jurisdiction in any district in which such obstruction may be threatened or may exist." To bring the case within the law authorizing an injunction for the removal of this boom, it is necessary for the court to find the same to be an unlawful obstruction. But the same having been affirmatively authorized by a valid law of this state at the time

of its creation, and being lawfully in existence at the date of the act of congress, the court cannot so find, and is therefore without authority to command its removal.

Let there be a decree dismissing the suit.